United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 03-30077

**UNITED STATES OF AMERICA,**

Plaintiff-Appellant-Cross-Appellee,

versus

**LEN DAVIS,**

Defendant-Appellee-Cross-Appellant,

**PAUL HARDY, also known as P., also known as Cool,**

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BARKSDALE, EMILIO M. GARZA, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Having been convicted in 1996 for a murder committed in 1994, Len Davis and Paul Hardy were sentenced to death under the Federal Death Penalty Act, 18 U.S.C. § 3591 *et seq.* (FDPA). On appeal, the convictions for one of the three counts of conviction were vacated; concomitantly, the death sentences were vacated; and the case was remanded for a new sentencing proceeding, with death being one of the possible sentences. *United States v. Causey*, 185 F.3d 407, 410-11 (5th Cir. 1999), *cert. denied*, 530 U.S. 1277 (2000).

On remand, in the light of *Jones v. United States*, 526 U.S. 227 (1999), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *United States v. Cotton*, 535 U.S. 625 (2002), and *Ring v. Arizona*, 536 U.S. 584 (2002), the district court held:  the indictment's not including the required FDPA intent element and claimed aggravating factor for substantial planning and premeditation (FDPA elements) precluded a death sentence.  Shortly before oral argument for this appeal, our court decided *United States v. Robinson,* 367 F.3d 278 (5th Cir. 2004), which held FDPA aggravating factors' not being included in an indictment renders it constitutionally deficient, but subject to harmless error review.

At issue is whether the harmless error standard of review applies here because, unlike in *Robinson*, defendants have *not* been sentenced.  This issue requires deciding at what point error attaches for the indictment's not including the FDPA elements.  We hold the *Robinson* harmless error standard applies because, for the unique procedural posture of this case, the error attached not at sentencing but when the final superceding indictment was returned, *after* the Government had given notice of its intent to seek the death penalty.  The error was harmless.  **VACATED and REMANDED.**

I.

Kim Marie Groves was murdered on 13 October 1994 in New Orleans, Louisiana, through the coordinated efforts of Davis, Hardy, and Damon Causey.  *Causey*, 185 F.3d at 411.  Davis, then a

2

New Orleans police officer, exchanged protection for favors with Hardy, then a New Orleans drug dealer. One of Hardy's favors, at Davis' request, was to murder Kim Groves.

Davis requested the murder because, on or about 10 October 1994, Kim Groves witnessed Davis' police partner pistol-whip an individual in her neighborhood. She filed a complaint against Davis with the police department's internal affairs office. After Davis learned of the complaint at approximately 1:00 a.m. on 13 October, he contacted Hardy by telephone; they discussed a plan to kill Kim Groves. Davis arranged to have Hardy and Causey meet him at the police station in order to take them to her.

Throughout the day and into the evening, Davis, Hardy, and Causey searched for Kim Groves. Eventually, Davis found her that day and paged Hardy to describe her clothing and location. Davis then called Hardy on his cellular telephone to order the murder, and Hardy replied he was "on [his] way". At approximately 11:00 p.m. on 13 October, Hardy shot Kim Groves in the head, killing her.

At the time he was planning the murder with Hardy and Causey, Davis was unaware of his being the target of an undercover investigation, including recording his cellular telephone conversations. (The evidence at trial included these conversations, together with the testimony of Davis' police partner, who was present during many of them.)

A one-count federal indictment in December 1994 (two months after the murder) against Davis, Hardy, and Causey was followed by

a three-count superceding indictment and a second superceding indictment. In July 1995, pursuant to the FDPA, the Government filed two notices of intent to seek the death penalty for Davis and Hardy and included the requisite FDPA elements. *See* 18 U.S.C. §§ 3592(c) and 3593(a).

In an August 1995 three-count, third superceding indictment (the indictment), count one charged conspiracy to violate the civil rights of Kim Groves and an unnamed individual by use of excessive force, resulting in death, in violation of 18 U.S.C. § 241. Eight overt acts, quoted *infra* in part II.B.2., were alleged in furtherance of the charged conspiracy. Count two charged violating Kim Groves' civil rights by use of excessive force by shooting her with a firearm, resulting in death, in violation of 18 U.S.C. §§ 242 and 2. Count three charged willfully killing Kim Groves to prevent her communications to a law enforcement officer regarding a possible federal crime, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and 2.

Defendants filed numerous pre-trial motions, including many contesting the legality and adequacy of the indictment. They never asserted pre-trial, however, that the indictment gave them insufficient notice of the charges. The motions were denied. Their motions regarding the Government's use of non-FDPA aggravating factors were denied in part and granted in part. *See*

4

*United States v. Davis, et al.*, 912 F. Supp. 938 (E.D. La. 1996) (*Davis I*).

Trial began on 8 April 1996; approximately two weeks later, the jury returned a guilty verdict on all three counts against Davis and Hardy. Causey was found guilty on the first two counts; the jury was unable to reach a verdict on the third. At the sentencing phase of trial, the jury was charged to decide whether an FDPA "death qualifying factor" existed for either Davis or Hardy. *See* 18 U.S.C. §§ 3592 and 3593(d). The jury found Davis and Hardy: intentionally killed Kim Groves; and did so after substantial planning and premeditation (the FDPA aggravating factor included in the earlier-referenced notices of intent to seek the death penalty, *see* 18 U.S.C. § 3592(c)(9)). Accordingly, the district court conducted a capital sentencing hearing. *See* 18 U.S.C. § 3593(e). At that hearing, the jury decided the death penalty was appropriate. Thereafter, Davis and Hardy were sentenced to death; Causey, to life imprisonment.

On appeal, our court affirmed the convictions for all three defendants for counts one and two but vacated them for count three for Davis and Hardy (as noted, Causey had not been convicted on that count). *Causey*, 185 F.3d at 410-11. Davis and Hardy's death sentences were vacated because it was impossible to conclude that the jury recommended the death penalty on the basis of counts one

and two, but not three. The case was remanded for resentencing. *Id.* at 423.

On remand, the Government again filed notices of intent to seek the death penalty against Davis and Hardy. The Government notified Davis of its intent to seek that penalty based on evidence of intent, as required by the FDPA, *see* 18 U.S.C. § 3591(a)(2)(A)-(D), the FDPA aggravating factor of substantial planning and premeditation, *see* 18 U.S.C. § 3592(c)(9), and his prior conviction for a drug offense that allowed imposition of a sentence exceeding five or more years, *see* 18 U.S.C. § 3592(c)(12). (This notice was amended to change Davis' felony conviction from a FDPA aggravating factor to a non-statutory aggravating factor.)

Utilizing the same FDPA elements, the Government also notified Hardy of its intent to seek the death penalty. In addition, the Government filed a notice of non-FDPA aggravating factors for both defendants.

In response, Hardy moved to have the FDPA aggravating factors declared unconstitutional. Each defendant filed numerous related motions (including re-urging all previous ones). Hardy also moved to prohibit retrial based on double jeopardy and to prohibit the Government's relying on his convictions on counts one and two as evidence of his intent to murder Kim Groves. The district court denied the first motion; it ruled the second moot because the Government conceded that the verdict on those two counts was not a

6

finding by the jury that either Davis or Hardy had the specific intent to murder.

Davis and Hardy appealed the district court's not dismissing on double jeopardy grounds. In April 2002, our court affirmed the denial.

That July, Davis moved in district court for reconsideration, based on *Ring*, 536 U.S. at 609 (holding that, "because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense' ... the Sixth Amendment requires that they be found by a jury") (quoting *Apprendi*, 530 U.S. at 494 n.19). Later, Hardy moved in limine to preclude, *inter alia*, the Government's seeking the death sentence.

These motions were granted in part and denied in part in December 2002. The district court ruled that the indictment's not including the requisite FDPA intent element and claimed aggravating factor precluded a death sentence: "[T]he right to grand jury presentment is not waivable and has not been waived. Jeopardy has likewise indisputably attached to the convictions already rendered. Under these unique circumstances ... the Fifth Amendment prohibits further capital proceedings". *United States v. Davis,* No. 94-381 (E.D. La. 12 December 2002) (*Davis II*).

II.

The Government concedes both the attachment of jeopardy and the timeliness of the challenge to the indictment for failure to

7

include the FDPA elements. Because jeopardy has attached, the Government is, of course, precluded from re-indicting Davis and Hardy. On this record, the linchpin to the Government's appeal is the applicable standard of review for the indictment's not including the FDPA elements. (Davis has withdrawn his cross-appeal contesting our jurisdiction.)

## A.

As noted, the district court held that *Ring*, in conjunction with *Cotton*, *Apprendi*, and *Jones*, requires an indictment to charge the FDPA elements necessary for the death penalty. *Jones*, 526 U.S. at 250-52, held that provisions of a carjacking statute, establishing higher penalties when the offense resulted in serious bodily injury or death, provided additional elements of the offense, not sentencing considerations. *Apprendi*, 530 U.S. at 490, later held that any fact (other than a prior conviction) that "increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt". Applying *Jones* and *Apprendi*, the Court in *Cotton*, 535 U.S. at 634, held an indictment's not including any allegation regarding the quantity of drugs involved in enhancing sentences beyond the statutory maximum was error; but, where there was no timely objection at trial, this error did not affect substantial rights where the evidence of quantity was "overwhelming and uncontroverted". Most recently, *Ring*, 536 U.S. at 609, held an

8

Arizona statute permitting the judge to determine whether aggravating factors necessary for the death penalty are present violates the Sixth Amendment right to trial by jury.

The district court held: the "addition of *Ring* to the rules set forth in *Jones* and *Apprendi* compels the conclusion that in a federal capital case, the grand jury must both find the FDPA intent and [aggravating] factors upon which the death penalty is premised and must set forth those findings in the allegations of [the] indictment in order to pass Fifth Amendment muster". *Davis II* at 5. It concluded: the allegations for those necessary FDPA elements are not found in counts one and two; and count three could not be considered in evaluating whether the grand jury found defendants willfully committed murder or engaged in concomitant substantial planning and premeditation because the convictions for this count had been vacated for lack of evidence. *Davis II* at 12; *Causey*, 185 F.3d at 407. (In *dictum*, the court added it was reluctant to conclude there was sufficient notice of substantial planning and premeditation because, besides federal courts, only two jurisdictions that impose the death penalty consider this an aggravating factor warranting that penalty. *Davis II* at 13.)

The FDPA intent element not alleged in the indictment requires finding a defendant

(A) intentionally killed the victim;

9

> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

18 U.S.C. § 3591(a)(2)(A)-(D).

The FDPA lists 16 aggravating factors, for which notice must be provided, that may form the basis for a federal death sentence for a homicide conviction. 18 U.S.C. § 3592(c). Examples of those factors are: pecuniary gain; substantial planning and premeditation; conviction for two felony offenses; and vulnerability of victim. 18 U.S.C. § 3592(c)(8), (9), (10), (11). As noted, the aggravating factor included in the notice of intent to seek the death penalty, but not alleged in the indictment, is "substantial planning and premeditation", defined by the FDPA as when "[t]he defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism". 18 U.S.C. § 3592(c)(9).

10

The Government claims the indictment is *not* deficient if read with maximum liberality.  In its original brief, the Government contended that the indictment includes "words of similar import" to the missing FDPA elements, so that a "fair construction" of the indictment must include them (quoting *United States v. Vogt*, 910 F.2d 1184, 1201 (4th Cir. 1990), *cert. denied*, 498 U.S. 1083 (1991), (quoting *Finn v. United States*, 256 F.2d 304, 306 (4th Cir. 1958))).

Shortly before oral argument here, however, our court decided *Robinson*; it held:  (1) "the government is required to charge, by indictment, the statutory aggravating factors it intends to prove to render a defendant eligible for the death penalty, and its *failure to do so ... is constitutional error*"; and (2) this error is subject to harmless error analysis.  *Id*. at 284-85 (emphasis added).  In the light of *Robinson*, the parties were ordered to provide supplemental briefing.

In its supplemental brief, the Government acknowledges *Robinson*'s holdings; nevertheless, it insists maximum liberality, not harmless error pursuant to *Robinson*, is the appropriate standard of review for this case, given its unusual procedural posture — *Davis and Hardy have not been sentenced*.  According to the Government, the constitutional error *vel non* will occur at sentencing, not when the final superceding indictment was returned by the grand jury.  *A fortiori*, it posits, as the district court

11

noted in *dictum*, that harmless error analysis cannot apply because *no* error has been committed.

Davis and Hardy agree, observing:  in **Robinson**, our court reviewed, *post-sentencing*, the grand jury's not including FDPA elements in the indictment; here, Davis and Hardy's death sentences having been vacated, they are, in effect, awaiting sentencing for the first time.  Consequently, they claim permitting the Government to seek the death penalty, knowing the indictment to be constitutionally deficient, would be tantamount to sanctioning the commission of error, but holding prospectively that it will be harmless.

No authority need be cited for the well-established rule that we, not the parties, determine our standard of review.  For the unique procedural posture of this case, and contrary to the parties' positions, constitutional error arising out of the FDPA elements' not being in the indictment attached prior to sentencing. On this record, because the Government, prior to the final superceding indictment, provided notice of intent to seek the death penalty under the FDPA, error occurred when that final indictment was returned without the requisite FDPA elements.

The attachment of Indictment Clause error at this point, rather than later at sentencing, is reflected in the Fifth Amendment.  "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of

a Grand Jury...."  U.S. CONST. amend. V.  "[H]eld to answer for"
does not refer only to sentencing, but rather to having to defend
against the charged crime.  Whether defendants have been sentenced
is not determinative for the indictment's constitutional
sufficiency *vel non*.

It can be urged, of course, that an otherwise sufficient
indictment without FDPA elements is *not* deficient; that it is
sufficient for a *non*-death penalty offense.  For example, **United
States v. Stewart**, 306 F.3d 295 (6th Cir. 2002), *cert. denied sub
nom.* **Benford v. United States**, 537 U.S. 1138 (2003), held an
indictment's not including the drug quantity forming the basis for
a greater sentence, although constitutional error, was not
reversible plain error.  In so doing, it concluded the Indictment
Clause error attached at sentencing.

> We also emphasize that the constitutional
> error likewise does not lie in the indictment
> itself....  Thus, it would be imprudent for
> defense counsel to object to an indictment
> which, by all rights, is facially sound....
>
> Instead of objecting to a valid indictment ...
> the proper time for a defendant to raise a
> challenge to his sentence is at the time the
> actual violation occurs -- sentencing.

*Id*. at 310.  The court reached this conclusion in a case, unlike
here, where the Government did *not* provide pre-trial notice of its
intent to seek the greater sentence.  *Id*. at 325.

13

Where, however, as in this case, there is an operative notice of intent to seek the death penalty under the FDPA and that notice has been provided prior to the final superceding indictment, an otherwise sufficient indictment is caused by the earlier notice to be constitutionally deficient; there is no reason to conclude the error does not attach until sentencing. For this unique case, the proper focus in examining Indictment Clause error is not at sentencing but earlier when the final superceding indictment is returned (which, again, was post-notice of intent to seek the death penalty).

Obviously, the focus of our Indictment Clause inquiry is not on the petit jury's verdict, but rather on the grand jury's charging decision for the indictment. (As noted, the Government concedes that defendants' objection at sentencing was timely. The final superceding indictment was returned in 1995, before **Jones**, **Apprendi**, **Cotton**, or **Ring**.) On the other hand, it bears reminding that, *imposition* of the death penalty is determined by the petit, *not grand*, jury. For purposes of assessing an indictment's constitutionality, there is no substantive difference in doing so when, as here, the Government is seeking the death penalty as compared to when it is seeking to preserve a death penalty conviction. For the penalty to be imposed, the petit jury must be presented with, and must find beyond a reasonable doubt, the FDPA elements. That is what the petit jury did in **Robinson**, 367 F.3d at

14

289 (and likewise what the petit jury did here, before the conviction was vacated in part, *Causey*, 185 F.3d at 407).  On remand, if the death sentence is to be imposed, the charge to the petit jury will again include the FDPA elements; those elements must be found beyond a reasonable doubt.

Along this same line, we ordinarily do not review this type of Fifth Amendment challenge until post-sentencing; usually, that is when we have jurisdiction.  Here, however, our jurisdiction derives from the district court's effectively dismissing the indictment to the extent that it would permit a death penalty.  Therefore, our court has jurisdiction under 18 U.S.C. § 3731, permitting review of an order dismissing an indictment.  Section 3731 is to be liberally construed, *see United States v. Wilson*, 420 U.S. 332, 337 (1975); and our court has recognized it as authority for our jurisdiction over a district court order striking death as a permissible sentence, *United States v. Woolard*, 981 F.2d 756, 757 (5th Cir. 1993) ("There is little question but that the district court's ruling was in every practical way as much of an alteration from the grand jury's charge as the striking of predicate acts and forfeiture allegations.  The district court effectively removed a discrete basis of criminal liability.").  Indeed, our court has recognized jurisdiction under § 3731 over an order dismissing the death penalty where the FDPA elements were not included in the indictment.  *United States v. Frye*, 372 F.3d 729, 733-34 (5th Cir.

15

2004) (vacating district court's holding constitutional speedy trial delay precluded seeking death penalty).

                                   B.

As noted, post-*Robinson*, the Government continues to urge reviewing the indictment with maximum liberality.  We are bound, however, by our court's precedent.  *E.g.,* ***United States v. Walker***, 302 F.3d 322, 325 (5th Cir. 2002).  Pursuant to ***Robinson***, our binding precedent, failure to present the FDPA elements to the grand jury for consideration in its charging decision, but nevertheless seeking the death penalty, was constitutional error. *See* ***Robinson***, 367 F.3d at 284.  Accordingly, we must decide whether that error was harmless.  *See* ***id***. at 285.

***Robinson*** describes the test for harmless constitutional error announced in ***Chapman v. California***, 386 U.S. 18 (1967), focusing on whether the error affects substantial rights.  ***Robinson***, 367 F.3d at 284-85.  This is accomplished by examining two of the primary functions of an indictment:  (1) providing the defendant notice of the crime charged, thereby allowing him to prepare a defense, and (2) "interpos[ing] the public into the charging decision, such that a defendant is not subject to jeopardy for a crime alleged only by the prosecution".  ***Id***. at 287.

                                   1.

The requisite notice was provided to Davis and Hardy, albeit not by the indictment.  As discussed, in July 1995, prior to the

16

August 1995 final superceding indictment and well in advance of trial in April 1996, the Government provided individualized notice to them of its intent to seek the death penalty on conviction on any count, and identified the applicable FDPA elements to establish death-eligibility under the FDPA. After the sentences were vacated, the Government again provided specific notice of its intent to seek the death penalty, again identifying the relevant FDPA intent element and the aggravating factor of substantial planning and premeditation.

2.

The next question is whether Davis and Hardy's substantial rights were affected by "losing the right to have the public determine whether there existed probable cause to charge the [required FDPA] factors" that would be used to sentence them. *Robinson*, 367 F.3d at 287. This is answered by deciding "whether, on the basis of the evidence that would have been available to the grand jury, any rational grand jury presented with a proper indictment would have charged that [Davis and Hardy] committed the offense in question". *Id*. at 288.

Considering the overt acts alleged in the indictment returned by the grand jury, there is no doubt that a rational grand jury would have found *probable cause* that the FDPA intent element and substantial planning and premeditation aggravating factor were present, had those elements been presented to it.

17

As discussed, the two remaining counts of the indictment charged Davis and Hardy with conspiracy to violate the civil rights of Kim Groves and an unnamed individual by use of excessive force, resulting in death, and with violating Kim Groves' civil rights by use of excessive force by shooting her with a firearm, resulting in death. For count one, the indictment alleged the following overt acts:

> 1. After learning that Kim Marie Groves had filed a civil rights complaint against him, defendant [Davis] contacted defendant [Hardy] on several occasions by cellular telephone on or about October 13, 1994, to arrange the murder of Kim Marie Groves.
>
> 2. On or about October 13, 1994, defendant [Davis] contacted defendant [Causey] by cellular telephone to arrange a meeting whereby defendant [Davis] would identify Kim Marie Groves to defendants [Hardy and Causey] thereby facilitating the murder of Kim Marie Groves.
>
> 3. On or about October 13, 1994, defendant [Davis], while on-duty and while using his official police car, conducted surveillance of Kim Marie Groves for the purpose of reporting Groves' physical description and location to defendant [Hardy].
>
> 4. On or about October 13, 1994, at 10:01 p.m., defendant [Davis], during a cellular telephone conversation, ordered defendant [Hardy] to "get that whore," thereby ordering the murder of Kim Marie Groves. Defendant [Hardy] agreed to kill Kim Marie Groves and stated in response, "Alright, I'm on my way."
>
> 5. On or about October 13, 1994, at 10:55 p.m., defendant [Hardy] shot Kim Marie Groves in the head with a 9 mm firearm, which resulted in her death.

18

6.    Defendant [Causey] did conceal the 9 mm firearm used to kill Kim Marie Groves by hiding the firearm in a chest-of-drawers in his bedroom, located at 3930 Florida Avenue, Apartment B, New Orleans, Louisiana.

7.    On or about October 14, 1994, [Davis], in a cellular telephone conversation, spoke with [Hardy] about killing the [unnamed] individual and [Hardy] replied that he wanted to kill the person that night.  [Davis] asked [Hardy] to "hold off" killing that individual that night because it would be "too suspicious."

8.    On October 17, 1994, [Davis] told [Hardy] in a cellular telephone conversation, that there was no need to kill the other known individual unless he was persistent in complaining against [Davis].  [Davis] added that if the individual complained about [Davis], it would be "Rock-A-Bye, Baby" (death) for the person.

These overt acts do not explicitly include the FDPA intent element or the substantial planning and premeditation aggravating factor.  Obviously, these FDPA elements are consistent with these alleged overt acts.  No rational grand jury could allege these overt acts, but fail to allege the specific intent to kill and concomitant substantial planning and premeditation.

As a result, these elements' not being included in the indictment did not affect Davis and Hardy's substantial rights.  Accordingly, the error is harmless.

III.

For the foregoing reasons, the order precluding the Government from seeking the death penalty against Davis and Hardy is **VACATED**;

19

this case is **REMANDED** for sentencing proceedings consistent with this opinion.

*VACATED and REMANDED*