**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 10, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 05-20430

———————————————

UNITED STATES OF AMERICA
            Plaintiff - Appellant,

versus

TYRONE MAPLETOFT WILLIAMS
            Defendant - Appellee.

———————————————

Appeal from the United States District Court
For the Southern District of Texas

———————————————

(USDC No. 4:03-CR-221-11)

Before HIGGINBOTHAM, DeMOSS, and OWEN, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Returning to this Court for the third time, this case arises out of an illegal alien smuggling conspiracy that caused the deaths of nineteen undocumented aliens secreted in the trailer of a tractor-trailer driven by defendant Tyrone Mapletoft Williams from Harlingen, Texas, to Victoria, Texas. Five days after receiving the case at the close of Williams's trial for various alien smuggling offenses in violation of 8 U.S.C. § 1324,[1] the jury returned the verdict form with both an entry of "guilty" and an express statement of "hopeless[] deadlock[]" on Counts 21 through

_____

[1]The full text of 8 U.S.C. § 1324 is provided in Appendix A.

The government appeals, and we now confront questions relating to the scope of Williams's second trial, if any.

**I**

In the evening of May 13, 2003, Williams and Fatima Holloway, one of the fourteen individuals charged in the conspiracy, loaded approximately seventy-four illegal aliens into Williams's tractor-trailer. With Williams driving, they departed Harlingen, Texas, for the 120-mile trip to Robstown, Texas. During the trip the aliens began banging on the sealed trailer, screaming to be released due to heat exhaustion and suffocation. Holloway suggested that Williams turn on the refrigeration unit in the trailer, but he refused. Shortly after passing a Border Patrol checkpoint, Williams noticed that the aliens had clawed a hole in the back door of the trailer and that his tail light was dangling from the door. Angered, Williams contacted the other individuals allegedly part of the conspiracy and demanded more money. They directed Williams to proceed to Houston, Texas, extending the trip by approximately 210 miles.

Upon reaching Refugio, Texas, Williams backed his trailer into a dark area and entered a nearby convenience store, where he purchased four or five small bottles of water. Williams continued north, stopping next in Victoria, Texas, where he parked the trailer in a dark field near another convenience store. Williams made three trips into the store, each time purchasing water. Then,

Williams asked Holloway to enter the store to purchase water, which she did.  When Holloway returned to the store a second time, again to purchase more water, one of the undocumented aliens from Williams's trailer ran into the store, shirtless, shouting that someone was trying to kill him.  As Holloway returned to the trailer, she noticed that the doors were open and that some of the aliens were walking into a nearby field.  Williams grabbed the water from Holloway, forced her into the cab, and sped away, abandoning the trailer.  Nineteen undocumented aliens died from dehydration and suffocation.

Williams and the other individuals were charged together in a sixty-count indictment with various alien smuggling offenses in violation of 8 U.S.C. § 1324.  Count 1 charged Williams and the others with conspiracy to conceal, harbor, shield from detection, and transport illegal aliens.  Counts 2 through 20 charged Williams, both as a principal and as an aider and abettor, with unlawful concealment of illegal aliens.

Counts 21 through 58 are the focal point of this appeal.  Counts 21 through 39 involved aliens that were allegedly injured during the unlawful transportation.  Specifically, Counts 21 through 39 charged that Williams

> did knowingly and in reckless disregard of the fact that
> the aliens identified in Counts Twenty-One (21) through
> Thirty-Nine (39) herein, were aliens who had come to,
> entered, and remained in the United States in violation
> of law, did transport, move, attempt to transport, and
> attempt to move said aliens in furtherance of such
> violation of law within the United States, namely, from

3

a location at or near Harlingen, Texas to another location at or near Victoria, Texas and other places, by means of a semi-tractor-trailer rig, for the purpose of commercial advantage and private financial gain. During and in relation to said violation, the defendants caused serious bodily injury to a person and placed in jeopardy the life of a person.

Counts 40 through 58 mirrored Counts 21 through 39, except that Counts 40 through 58 involved aliens that died as a result of the transportation.

Because nineteen aliens died, Williams and most of the co-defendants were subject to the death penalty under § 1324(a)(1)(B)(iv). After complying with Department of Justice protocol, the government filed a Notice of Intent to Seek the Death Penalty against Williams, and the district court severed Williams's case from the other defendants. Williams sought discovery of the government's capital-charging practices, alleging that the United States selectively prosecuted him on account of his race; the government objected, asserting that Williams had not carried his burden under *United States v. Armstrong* and *United States v. Bass*.[2] The district court ordered discovery into the government's capital-charging practices and issued a "sanctions" order, creating an affirmative defense based on selective prosecution. We granted the government's petition for mandamus, vacating the discovery order and the sanctions.[3]

---

[2]517 U.S. 456 (1996); 536 U.S. 862 (2002).

[3]*In re United States*, 397 F.3d 274 (5th Cir. 2005).

Williams then renewed a previously denied motion to have the guilt/innocence phase determined by a non-death qualified jury and to have a new, death-qualified jury decide punishment, if necessary. The district court granted Williams's request, finding "good cause" due to "[t]he case management problems that have arisen in this case because of the Government's interlocutory appeal of this Court's discovery rulings." At the conclusion of a status conference on Friday, February 4, 2005, the district court announced that the trial would begin at 9:00 A.M. on Monday, February 7, 2005, with a non-death qualified jury. The next day, a Saturday, this Court ordered a stay of the trial until it could rule on the government's second petition for writ of mandamus. On February 14, 2005, this Court rendered its second published opinion in this case, holding that the district court "improvised a procedure at odds with the Federal Death Penalty Act." We vacated the order and directed that the case proceed promptly to trial with a single, death-qualified jury for both phases of the case.[4]

Jury selection began on February 22, 2005, with a jury panel of 250 citizens. Trial began on March 8, 2005, and the United States presented testimony and evidence from approximately eighty witnesses, including many foreign nationals requiring translation. The jury received the case on March 18, 2005.

---

[4]*United States v. Williams*, 400 F.3d 277 (5th Cir. 2005).

Both the jury instructions and the verdict form are critical to the questions presented in this case. With respect to Counts 21 through 39, the jury instructions provided:

> Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i), make it a crime for anyone to transport an alien within the United States for the purpose of commercial financial advantage and private financial gain, knowing or in reckless disregard of the fact that the alien is here illegally, and in furtherance of the alien's violation of law.
>
> For you to find the Defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: That certain undocumented aliens had entered or remained in the United States in violation of law.
> *Second*: That the Defendant knew or recklessly disregarded the fact that the aliens were in the United States in violation of the law;
> *Third*: That the Defendant transported or attempted to transport the aliens within the United States with intent to further the alien's unlawful presence;
> *Fourth*: That an offense was done for the purpose of commercial advantage or private financial gain.
>
> You will also be asked to determine if the Government has proved the following beyond a reasonable doubt: If, during and in relation to said violation Defendant caused serious bodily injury to a person and placed the life of a person in jeopardy.

These instructions tracked the Fifth Circuit's Pattern Jury Instructions, except that the district court included one of the facts necessary for punishment--that the offense was done for the purpose of commercial advantage or private financial gain--as an element of the basic transportation offense.

6

Also following the Fifth Circuit's Pattern Jury Instructions, the instructions explained how Williams could be found guilty as an aider and abettor, and the instructions required the jury to make an independent determination of Williams's role in the offense:

> You will also be asked to determine whether the Defendant acted as a principal, as an aider and abettor, or both. A "principal" is the immediate perpetrator of a crime; that is, the one who directly commits the offense. The principal is the actual offender rather than one who merely assists another in committing an offense. An "aider and abettor" is one who helps the principal during the commission of the crime, but may not have committed the crime with his or her own hands.

The instructions did not define what it meant or how it could be that a single defendant could be "both" a principal and an aider and abettor in the commission of a single crime.[5]

The verdict form tracked the jury instructions. The government concedes that it was "drafted differently" in this case. As the Court of Appeals for the District of Columbia explained,

> When a greater and lesser offense are charged to the jury, the proper course is to tell the jury to consider first the greater offense, and to move on to consideration of the lesser offense only if they have some reasonable doubt as to guilt of the greater offense.[6]

Here, in contrast, the order was reversed. The jury was first asked to enter a finding of guilt on the basic transportation

---

[5]Counts 40 through 58 pertained to illegal aliens who died as a result of being transported in Williams's tractor-trailer. The jury was to determine the additional fact: "If, during and in relation to said violation, Defendant caused serious bodily injury to a person, placed the life of a person in jeopardy, and the death of a person resulted from the conduct." In all other respects, the jury instructions on Counts 40 through 58 mirrored those of Counts 21 through 39.

[6]*Fuller v. United States*, 407 F.2d 1199, 1227 (D.C. Cir. 1968) (en banc).

7

offense, which included the "financial gain" element.  Then, the jury was asked two additional questions: whether the defendant acted as a principal, an aider and abettor, or both; and whether the defendant's actions caused any of the statutory injury factors.

With respect to Counts 21 through 39, the verdict form stated:

> We, the jury, unanimously find the Defendant,
> Tyrone Mapletoft Williams
>
> _____
> "Guilty" or "Not Guilty"
>
> *The jury is instructed that, should you find the Defendant not guilty, you do not need to answer the questions immediately following and may proceed to the next Count.*
>
> We, the jury, further unanimously find beyond a reasonable doubt that during and in relation to said violation the defendant, Tyrone Mapletoft Williams was:
>
> ___  A principal
> ___  An aider and abettor
> ___  Both, a principal and an aider and abettor
>
> We, the jury, further unanimously find beyond a reasonable doubt that during and in relation to said violation [NAME OF VICTIM]:
>
> 1)   Was caused serious injury          [yes], [no]
> 2)   Was placed in jeopardy of death    [yes], [no]

With respect to Counts 40 through 58, the verdict form was identical, except that it instructed the jury to also determine if the death of a person resulted from the offense conduct.  The verdict form contained the additional line:

> 3)   Died as a result of the conduct    [yes], [no]

8

Five days after receiving the case, the jury returned two notes, both indicating that, with respect to Counts 1 through 20 and certain aspects of Counts 21 through 58, the jury was "hopelessly deadlocked." Specifically, the first note provided:

> Judge Gilmore,
>
> It appears that this jury is hopelessly deadlocked on Counts 1 and 2-20. We have agreed on guilt/non-guilt on Counts 21-39 and 40-58 but are hopelessly deadlocked on the sub-questions on those counts.

Following an *Allen* charge, the jury returned the second note:

> Judge Gilmore,
>
> Arguments have been made, evidence has been reviewed, and we have discussed all at length. There is and has been no movement. We are deadlocked as before.

Judge Gilmore polled the jury, and only three of the jurors believed that it would be useful to continue deliberating. The other nine reiterated that they were hopelessly deadlocked.

The jury's verdict form contained only an entry of "guilty" on the first line provided in Counts 21 through 58. Besides the two notes, the jury gave no other indication of how it resolved any issue in this case. Williams moved for a mistrial on "whatever they haven't reached a verdict on." The court determined that the jury returned a verdict of guilty on aiding and abetting the commission of the transportation offense in Counts 21 through 58, and it entered a judgment on that verdict. The court declared a mistrial on Counts 1 through 20.

9

The government disputed the district court's interpretation of the jury's work. At a status conference on April 11, 2005, the government announced its intention to retry Williams on Counts 1 through 58. The district court denied the government's request, stating that the government could retry Williams only on Counts 1 through 20. The government filed a motion for reconsideration, which the district court denied, holding that the Double Jeopardy Clause barred retrial on Counts 21 through 58 "because the evidence presented by the Government at trial was found to be insufficient by the unanimous jury to establish that the injury factors should enhance the sentence." The court relied upon *Bullard v. Estelle*, in which we held that "the double jeopardy clause bars a second enhancement proceeding when the evidence at the first enhancement proceeding was insufficient to establish that the defendant committed one or more of the prior offenses necessary for enhancement."[7] The district court held that the government presented insufficient evidence to establish the injury factors, a conclusion the court reached from the circumstance that, in her words, the jury "remained silent" on the "sub-questions" in Counts 21 through 58. The government timely appealed.

## II

The government's right to appeal in criminal matters is controlled by 18 U.S.C. § 3731. That section provides, in part:

---

[7]656 F.2d 1347, 1349 (5th Cir. 1982).

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.[8]

By its own terms, § 3731 is to be "liberally construed to effectuate its purposes,"[9] as it is "intended to remove all statutory barriers to government appeals and to allow appeals whenever the Constitution would permit."[10] We examine the consequences of the ruling by the district court, unbounded by the label given it. A district court judge cannot circumvent the government's right to appeal under § 3731 by taking action that has the effect of a dismissal yet never actually entering a "decision, judgment, or order."[11]

Here, the district court never entered an order dismissing Counts 21 through 58 of the indictment; rather, the court entered

---

[8]18 U.S.C. § 3731 (2005).

[9]*Id.; see also United States v. Aslam*, 936 F.2d 751, 754 (2d Cir. 1991); *United States v. Edmondson*, 792 F.2d 1492, 1496 (9th Cir. 1986).

[10]*United States v. Wilson*, 420 U.S. 332, 337 (1975).

[11]*United States v. Woolard*, 981 F.2d 756, 757 (5th Cir. 1993) (holding that appeal under § 3731 was appropriate when the district court's action "effectively removed a discrete basis of criminal liability," which had the practical effect of a dismissal); *United States v. Davis*, 380 F.3d 821, 828 (5th Cir. 2004) (finding jurisdiction to review a district court's ruling that the government could not seek the death penalty on an indictment that failed to allege the required intent elements and statutory aggravating factors under the Federal Death Penalty Act); *see also United States v. Marubeni Am. Corp.*, 611 F.2d 763, 764-65 (9th Cir. 1980) (finding jurisdiction to review an order striking forfeiture allegations from a RICO indictment); *United States v. Levasseur*, 846 F.2d 786, 788 (1st Cir. 1988) (reviewing a pretrial order striking a predicate act from a RICO count).

a "judgment" on the jury's "verdict" of guilty on the aiding and abetting offense alleged in Counts 21 through 58, refused the government's request to retry Williams on the "greater aggravated offenses" in those counts, and denied the government's motion to reconsider that refusal. If the government cannot proceed on the greater aggravated offenses in Counts 21 through 58, then the district court's entry of judgment and denial of the government's motion for reconsideration "effectively remove[s] a discrete basis of liability," which has the practical effect of a dismissal.[12] If the government cannot proceed on the greater aggravated offenses, then Williams is not subject to the higher penalties, including death, provided for in 8 U.S.C. § 1324(a)(1)(B)(i), (iii), and (iv). We have jurisdiction under § 3731.[13]

## **III**

Our task is to determine whether the government can retry Williams for various alien smuggling offenses and, if so, what the scope of that second trial will be.[14] Both parties agree that the

---

[12]*Woolard*, 981 F.2d at 757; *Davis*, 380 F.3d at 828.

[13]Williams also contends that the government may only appeal to the extent authorized by the Constitution and that since retrial is barred by the Double Jeopardy Clause, the government cannot appeal. This argument is meritless. The primary question on appeal, discussed *infra*, concerns the impact of the Double Jeopardy Clause on a second trial. This Court plainly has jurisdiction to consider the merits of the double jeopardy question in order to resolve the jurisdictional inquiry under § 3731. *See, e.g.*, *United States v. Martin Linen Supply Co.*, 534 F.2d 585, 588-89 (5th Cir. 1976) (dismissing appeal for lack of jurisdiction under § 3731 after determining that, on the merits, the Double Jeopardy Clause barred further prosecution).

[14]There is no dispute that the government can retry Williams on Counts 1 through 20. The jury's first note plainly stated, "It appears that this jury is hopelessly deadlocked on Counts 1 and 2-20." And the district court declared a

12

jury convicted Williams on Counts 21 through 58 of aiding and abetting the commission of the transportation offense, although for widely divergent reasons. To Williams, the conviction for aiding and abetting triggers the Double Jeopardy Clause,[15] which precludes a second trial on the greater aggravated offenses in Counts 21 through 58. To the government, the aiding and abetting conviction does not preclude retrial on the "greater aggravated offenses" in those counts. The government seeks to keep the aiding and abetting conviction in its hip pocket, should a second trial, if any, result in a complete acquittal.

*A*

Regardless of whether we agree with Williams that there was a conviction for aiding and abetting, that conviction would not preclude a second trial on the "greater aggravated offenses" in Counts 21 through 58. It is plain that, following *Apprendi*, the "injury factors" in 8 U.S.C. §§ 1324(a)(1)(B)(iii) and (iv) are "elements" of "greater aggravated offenses," as the government

---

mistrial on those counts. The Double Jeopardy Clause does not bar a second trial when the first trial ended with a hung jury. *United States v. Perez*, 9 Wheat. 579, 580 (1824) (Story, J.) (holding that a failure of the jury to agree on a verdict was an instance of "manifest necessity" which permitted a judge to terminate the first trial and retry the defendant because "the ends of justice would otherwise be defeated"); *Richardson v. United States*, 468 U.S. 317, 323–24 (1984) (same).

[15]UNITED STATES CONSTITUTION amend. V.

contends, rather than mere "sentencing factors," as determined by the district court.[16]

The transportation offense carries a base-level punishment of five years imprisonment.[17] Proof of the injury factors in both §§ 1324(a)(1)(B)(iii) and (iv) increases the statutory maximum beyond that provided in § 1324(a)(1)(B)(ii). With § 1324(a)(1)(B)(iii), the maximum penalty increases to 20 years if the government proves that during the commission of the offense, the defendant caused serious bodily injury to, or placed in jeopardy the life of, any person. Likewise, with § 1324(a)(1)(B)(iv), the maximum penalty increase to life in prison or death if the government proves that during the commission of the offense, the defendant caused the death of any person. Following *Apprendi*, each additional fact--the specific injury that resulted--must be alleged in the indictment, submitted to the jury, and found beyond a reasonable doubt. In short, each additional fact is an "element" of a greater aggravated offense.[18]

---

[16]*Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt); *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (applying *Apprendi* to conclude that any fact that increases a defendant's punishment to a possible sentence of death must be found by a jury beyond a reasonable doubt).

[17]8 U.S.C. § 1324(a)(1)(B)(ii).

[18]*Apprendi*, 530 U.S. at 490; *Ring*, 536 U.S. at 609; *see also Castillo v. United States*, 530 U.S. 120 (2000); *Jones v. United States*, 526 U.S. 227 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224 (1999). This construction of § 1324 is bolstered by the Fifth Circuit's *Pattern Jury Instructions*, which set forth the elements for conviction of § 1324(a)(1)(A)(ii). The instructions do not list any of the injury factors as elements of the basic offense. Citing

Given that the "injury factors" are elements of greater aggravated offenses, the presence or absence of a conviction on the lesser offense--basic transporting--is immaterial in light of the jury's express statement of deadlock on the injury factors. If there were no conviction for aiding and abetting, then Williams's first trial ended with a hung jury, which does not preclude a second trial. If we assume that there was a conviction, then we would have a conviction on a lesser offense and a "hopelessly deadlocked" jury on the greater offense. In such a case, we agree with the Eighth Circuit that "where the jury expressly indicates that it is unable to reach an agreement on the greater charge, a conviction on a lesser included offense does not constitute an implied acquittal of the greater offense and presents no bar to retrial on the greater offense."[19]

Williams, relying on *Green v. United States*, argues that the conviction on the basic transportation offense, even as an aider and abettor, implies that the jury acquitted him of everything else. We disagree. In *Green*, the Supreme Court recognized that a jury's *silence* can be considered an implied acquittal. There, the Supreme Court held that a jury's verdict on second-degree murder, coupled with silence on the greater offense (first-degree murder),

_____

*Apprendi*, the instructions note that § 1324 "describes aggravating factors" which raise the statutory maximum penalty and must be "submitted as additional elements if charged in the indictment." Fifth Circuit Pattern Jury Instructions § 2.03.

[19]*United States v. Bordeaux*, 121 F.3d 1187, 1193 (8th Cir. 1997).

15

was no different "than if the jury had returned a verdict which expressly read: 'We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree.'"[20] On such facts, the Double Jeopardy Clause precludes retrial of the greater offense.[21] Williams's reliance on *Green* falls short where, as here, the jury was not "silent" on the greater aggravated offenses. Both jury notes, as well as the subsequent poll, plainly indicate that the jury was "hopelessly deadlocked" on the injury factors in Counts 21 through 58. A statement of hopeless deadlock is neither a statement of silence, nor a statement of acquittal.

*B*

As things stand, the government, if it chooses, can retry Williams on Counts 1 through 20 and on the "greater aggravated offenses"--the transportation offense (§ 1324(a)(1)(A)(ii)) with the additional injury factors (§§ 1324(a)(1)(B)(iii) and (iv))--in Counts 21 through 58. We now turn to the remainder of Counts 21 through 58, which concern Williams's role in the transportation offense. Specifically, we examine whether the jury convicted him of aiding and abetting the commission of the transportation offense when it returned both an entry of "guilty," as to the elements of the offense, but a statement of "hopeless[] deadlock[]," as to his

[20]*Green v. United States*, 355 U.S. 184, 190-91 (1957); *see also Price v. Georgia*, 398 U.S. 323, 328-29 (1970) (holding that a guilty verdict on a voluntary manslaughter charge and silence on a murder charge precluded retrial of the greater offense).

[21]*Green*, 355 U.S. at 190; *see also Price*, 398 U.S. at 329.

16

role in the offense.  We conclude that the jury failed to convict Williams of any offense.  Thus, the government may retry Williams on the basic transportation offense in Counts 21 through 58--as either a principal or as an aider and abettor.

1

First, the district court erred in this case when it engrafted onto the elements of the transportation offense (§ 1324(a)(1)(A)(ii)) an element of a greater aggravated offense--namely, that the offense was committed "for the purpose of commercial advantage or private financial gain."[22]  The "financial gain" fact is an "element" of a separate, greater offense.[23]  In short, there are two offenses--(1) transporting and (2) transporting for financial gain--and the former is a lesser included offense of the latter.[24]

Although the district court gave the jury a correct explanation of the four elements of transporting for financial gain, that was error because the government proceeded on two theories regarding Williams's role in the offense: that of a principal and that of an aider and abettor.  As we have previously held, when the government proceeds on an aider and abettor theory, "the question of financial gain--whether by the defendant or

---

[22]8 U.S.C. § 1324(a)(1)(B)(i).

[23]*See Apprendi*, 530 U.S. at 490; *Jones*, 526 U.S. at 232-35.

[24]*See Blockburger v. United States*, 284 U.S. 299, 303-04 (1932).

17

others--is immaterial and should not be introduced into the picture lest it cause confusion."[25]

That confusion stems from the interplay between the defendant's role in the offense and the possible maximum sentences. If the defendant's role in the transportation offense is only that of an aider and abettor, then the maximum punishment is 5 years imprisonment under § 1324(a)(1)(B)(ii). Yet if the defendant commits the offense as a principal *and* for financial gain, then the maximum punishment is 10 years imprisonment under § 1324(a)(1)(B)(i). An aider and abettor, even one who commits the offense for the purpose of financial gain, is <u>only</u> subject to a maximum of 5 years imprisonment.[26] Because the district court only presented the jury with the "transporting for financial gain" offense, the government was forced to seek a separate question on Williams's role in that offense. On that question the jury was "hopelessly deadlocked," which precludes the district court from sentencing Williams. Without a determination of Williams's role in the offense, we cannot say whether the maximum term of imprisonment is 5 years (under § 1324(a)(1)(B)(ii)) or 10 years (under § 1324(a)(1)(B)(i)).

2

---

[25]*United States v. Nolasco-Rosas*, 286 F.3d 762, 767 (5th Cir. 2002).

[26]8 U.S.C. § 1324(a)(1)(B)(ii); *Nolasco-Rosas*, 286 F.3d at 767.

Second, we cannot sustain a conviction for aiding and abetting because the jury did not unanimously agree that Williams's role in the offense was that of an aider and abettor.  The jury was asked to make this finding,[27] but both jury notes confirm that they could not reach unanimous agreement on one or the other.[28]  Conviction in the federal system, however, requires a unanimous verdict.[29]  This rule of unanimity extends to every element of the offense.[30]  A lack of unanimity on Williams's role in the offense may not be fatal, however, as the unanimity requirement is not absolute.  For instance, unanimity is not required as to the particular *means* used by the defendant to commit a particular element of the offense.[31]

---

[27]The charged asked the jury "to determine whether [Williams] acted as a principal, as an aider and abettor, or both."

[28]The first noted stated that the jury was "hopelessly deadlocked on the sub-questions" in Counts 21 through 58.  The second reiterated this deadlock: "There is and has been no movement.  We are deadlocked as before."

[29]FED. R. CRIM. PROC. 31(a).

[30]*Richardson v. United States*, 526 U.S. 813, 817 (1999) ("[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element."); *In re Winship*, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Andres v. United States*, 333 U.S. 740, 748 (1948).

[31]Justice Breyer explained,

Where, for example, an element of robbery is force or the threat of force, some jurors might conclude that the defendant used a knife to create the threat; others might conclude that he used a gun.  But that disagreement--a disagreement about *means*--would not matter as long as 12 jurors unanimously concluded that the Government had proved the necessary related element, namely, that the defendant had threatened force.

*Richardson*, 526 U.S. at 817; *see also Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (plurality op.); *Anderson v. United States*, 170 U.S. 481, 499-501 (1898).

19

Here, in light of the jury's express and unequivocal statement of "guilty," we could extend that *means* exception to the rule of unanimity to the defendant's *role* in the offense.

We do not think the rule of unanimity ought to be extended so far. Mere agreement on some form of culpable conduct is not sufficient to convict Williams under § 1324. Unlike the general aiding and abetting statute,[32] the alien smuggling statute distinguishes for purposes of punishment between a principal and an aider and abettor. Under the general aiding and abetting statute, a person who aids and abets the commission of an offense is treated the same as a principal actor: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."[33] Cabining the defendant's role into a particular box is unnecessary. In fact, the jury will seldom be asked to make an independent determination of whether the defendant committed the offense as a principal or as an aider and abettor. Both are sufficient for conviction; both are treated the same for punishment.

We need not decide today whether, under the general aiding and abetting statute, the jury's lack of unanimity on the defendant's role in the offense is sufficient for conviction. The alien

---

[32] 18 U.S.C. § 2.

[33] 18 U.S.C. § 2; *see also* U.S. SENTENCING GUIDELINES § 2X2.1 (2005 ed.) (providing that "[t]he offense level [for aiding and abetting] is the same level as that for the underlying offense").

20

smuggling statute distinguishes between a principal and an aider and abettor for purposes of punishment. As the government proceeded on both tracks regarding Williams's role in the transportation offense, the jury must unanimously agree on at least one. The evidence in this case can tell two different stories. To some, Williams could have appeared as a principal actor in the conspiracy: driving the tractor-trailer; refusing to activate the trailer's refrigeration unit, despite advice from Holloway; refusing to release the aliens; and ignoring the aliens' pleas for release. To others, Williams could have appeared to be a mule, a mere pawn in the larger smuggling conspiracy: calling the other individuals for instructions; demanding more money; purchasing water bottles for the aliens; and leaving the scene once the aliens forged their own escape. All we have is "hopeless[] deadlock[]" on the specific question, and this is insufficient for conviction.

We recognize that, as a legal matter, any juror convinced that Williams acted as a "principal" was also convinced that Williams acted as an "aider and abettor." But we decline to stretch the rule of unanimity so far as to imply a conviction. We do not know why the jury was unable to agree; all we know is that they could not agree. Neither the charge nor any response to the jury notes instructed the jury on how a single person could be "both" a principal and an aider and abettor in the commission of a single offense or explained that, as a legal matter, a juror convinced Williams was a principal necessarily believed that Williams was

21

also an aider and abettor. When the jury announced that it could not agree, their confusion was plain, but it went unaddressed. The reality is that jurors persuaded that Williams played the significant role of principal never agreed that his role was the lesser one of aider and abettor, nor did jurors persuaded that Williams's role was that of aider and abettor ever agree that Williams played the larger role of principal.

In light of the lack of basic guidance to the jury, we decline to judicially convict Williams of aiding and abetting on the basis of a legal inference. To do so would be to find meaning in a "verdict" upon premises fundamentally different from those on which the district court erroneously asked the jury to decide. This jury did not unanimously agree on Williams's role in the offense, and it is not the case that the trial judge can simply default to the lowest possible sentence, especially when that requires ignoring the express statements of the jury. In short, the district court erred when it entered a judgment of conviction on the supposed "verdict" returned by the jury. There was no verdict.

## VI

Accordingly, we VACATE the judgment of conviction entered by the district court on the jury's "verdict" in this case. Heeding the plea of the district court regarding her crowded docket and in view of the extraordinary history of this case, we REMAND this case to the Chief District Court Judge of the Southern District of Texas

22

for random reassignment to another judge for trial, should the government elect to proceed.

## § 1324.  Bringing in and harboring certain aliens

## (a) Criminal Penalties

(1)(A) Any person who --

> (i)  knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien;

> (ii)  knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

> (iii)  knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

> (iv)  encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or

> (v)  (I) engages in any conspiracy to commit any of the preceding acts, or
>
> (II) aids or abets the commission of any of the preceding acts,

shall be punished as provided in subparagraph (B).

> (B)  A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs --

> (i)  in the case of a violation of subparagraph (A)(i) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for the purpose of commercial advantage or private financial gain, be fined under Title 18, imprisoned not more than 10 years, or both;

> (ii)  in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be fined under Title 18, imprisoned not more than 5 years, or both;

(iii) in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v) during an in relation to which the person causes serious bodily injury (as defined in section 1365 of Title 18) to, or places in jeopardy the life of, any person, be fined under Title 18, imprisoned not more than 20 years, or both; and

(iv) in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v) resulting in the death of any person, be punished by death or imprisoned for any term of years or for life, fined under Title 18, or both.