# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 6, 2012

No. 12-30036

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

PAUL HARDY,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:94-CR-381-2

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Sixteen years ago, Paul Hardy ("Hardy") was tried and convicted for his role as the shooter in a plot to prevent a witness, Kim Groves ("Groves"), from testifying against then-police officer Len Davis ("Davis").[1] Several appeals later, Hardy challenges his conviction and sentence of life imprisonment, after having been found ineligible for the death penalty pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] A third co-conspirator, Damon Causey ("Causey") was also involved.

No. 12-30036

## I.  Facts and Background

The facts of this case and its procedural history to that point are described in detail in our prior opinion in one of the several appeals by Davis and Hardy. *United States v. Davis*, 380 F.3d 821 (5th Cir. 2004) (*Davis I*).  We thus provide only those facts and the procedural history necessary to understand the discrete issues here presented.

Groves was a witness to police brutality by Davis.  Davis solicited Hardy and Causey to obtain Groves's silence by killing her.  Ultimately, Hardy shot Groves, who died shortly thereafter.  Hardy, Davis, and Causey were charged with three federal counts in a third superceding indictment: conspiring to violate Groves's civil rights by use of excessive force resulting in death (18 U.S.C. § 241); violating Groves's civil rights by use of excessive force by shooting her with a firearm resulting in death (18 U.S.C. §§ 2, 242); and willfully killing Groves to prevent her communication regarding a possible federal crime (18 U.S.C. § 1512(a)(1)(C), (a)(2)).  Hardy and Davis were convicted of all three counts and sentenced to death.  On appeal, we affirmed the convictions on the first two counts, but vacated them on the third count as to Hardy and Davis.[2] *United States v. Causey*, 185 F.3d 407, 410 (5th Cir. 1999).  We thus remanded for resentencing.

On remand, Hardy and Davis argued for the first time that the indictment was insufficient to support the death penalty because it lacked certain aggravating statutory factors.  The district court agreed and concluded that the death penalty was unavailable against both Hardy and Davis, although it concluded that the indictment would support the sentence of life imprisonment. The Government appealed.  We vacated the district court's order, concluding that the indictment deficiencies were constitutional error but that the error was

---

[2]  The jury found Causey guilty on the first two counts, but it was unable to reach a verdict as to him on the third count.

No. 12-30036

harmless because the Government had given pre-trial notice of its intent to seek the death penalty and provided a detailed list of the aggravating factors on which it relied. *Davis I*, 380 F.3d at 829.[3]  In so doing, we relied upon our then-recent case of *United States v. Robinson*, 367 F.3d 278, 285 (5th Cir. 2004).

On the subsequent remand, the district court did not conduct the contemplated new jury trial on the death penalty because it found after an *Atkins* hearing that Hardy could not receive the death sentence due to his mental retardation.  The district court then sentenced him to the advisory guidelines-recommended term of life imprisonment. This timely appeal followed.

## II.  Discussion

On appeal, Hardy again challenges the indictment, contending that it was insufficient to support the elements of the offense that would support life imprisonment.  In *Davis II*, Davis advanced similar arguments in support of his attack on the indictment.  We concluded that the law of the case doctrine foreclosed his attack on the indictment.  609 F.3d at 693.

We similarly conclude that Hardy's challenge to the indictment is barred by *Davis I*.  Hardy argues that *Davis I* held only that the indictment errors did not prevent imposition of the death penalty, not life imprisonment.  This is a puzzling argument to say the least, and he fails to cite any authority for the proposition that harmless error for imposition of the death penalty can suddenly become reversible error for a lesser sanction.

Even if we were to determine that *Davis I* does not bind us, we are bound by the analysis in *Robinson*.  Hardy essentially concedes that *Robinson* forecloses his argument, but he argues that *Robinson* was wrongly decided, citing precedent from other circuits and a dissenting opinion from Justice Scalia in *United States v. Resendiz-Ponce*, 549 U.S. 102, 116 (2007).  What he does not

---

[3] Thereafter, Davis was sentenced to death.  We affirmed his conviction and sentence. *United States v. Davis*, 609 F.3d 663 (5th Cir. 2010) (*Davis II*).

3

do is cite to intervening binding precedent from the United States Supreme Court or our en banc court or some applicable change in the statutory law, as required by our rule of orderliness. *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

Under *Robinson*, we analyze a defective indictment[4] for harmless error under a two-part test: (1) whether the defendant had notice of the charges sufficient to prepare a defense; and (2) whether a grand jury would have indicted using the proper elements. 367 F.3d at 287.[5] We have little difficulty dispensing with the former prong, as we did in *Davis I*, since the Government's pre-trial notice gave adequate notice of the allegations against Hardy (and he has never contended otherwise). As far as the latter prong, Hardy argues that we must analyze the question of what a reasonable grand jury would have done by looking at the actual evidence presented to the grand jury, not the available evidence that could have been presented. He concedes that *Robinson* looked at the evidence that "would have been available," *see* 367 F.3d at 288-89 (using the petit jury's findings as "persuasive evidence of how a grand jury would find"),

---

[4] Because of our analysis here, we need not determine the question left open in *Davis I*—whether the indictment error alleged is indeed constitutional error when the case is not a death penalty case. *See* 380 F.3d 821. Additionally, we need not decide whether there actually was an error in the indictment and whether Hardy adequately briefed this point. We also need not decide whether Hardy waived this point by failing to cross-appeal during the 2003 appeal that resulted in *Davis I*. We simply note that only in passing does Hardy state what he claims is wrong with the indictment: that it failed to contain an "allegation that death resulted from the acts committed in violation of the pertinent statute" and "that defendants intended that a death result from acts committed in violation of the statute." We observe that the indictment charged Hardy with conspiring to deprive Groves of constitutional rights, that "part . . . of the purpose of this conspiracy [was] that . . . Groves would be killed, and that Hardy "shot . . . Groves in the head with a 9 mm firearm, which resulted in her death."

[5] The second *Robinson* element is whether the defendant has had the benefit of interposing the public in the charging decision such that a defendant does not stand trial on the prosecutor's charge alone. 367 F.3d at 287. In turn, this question is assessed by looking at whether no rational grand jury would fail to indict upon the evidence for the charges correctly stated. *Id.* at 288.

No. 12-30036

and we must do so here as well. *See United States v. Dentler*, 492 F.3d 306, 311 (5th Cir. 2007). There was ample evidence to support Hardy's intent to kill—indeed, he was the triggerman who stalked Groves before fatally shooting her—as well as the other factors that support the higher statutory maximum of life imprisonment.

AFFIRMED.