United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 7, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-40478
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO MARTINEZ-LUGO,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:

A jury found Roberto Martinez-Lugo guilty of the importation and possession with the intent to distribute approximately 772 kilograms of marijuana, which was found secreted in the tires of the truck he was driving across the Texas-Mexico border. On appeal, he challenges the sufficiency of the evidence to convict and the propriety of his sentence in light of United States v. Booker, __ U.S. __, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We affirm.

Appellant contends first that the evidence showed only that he was hired at random by an unknown man and that he was

"duped into driving the tractor-trailer across the border." In evaluating the sufficiency of the evidence, this court asks whether any reasonable trier of fact could have found that the evidence established the essential elements of the crime beyond a reasonable doubt. United States v. Ortega Reyna, 148 F.3d 540, 543 (5th Cir. 1998). We consider the evidence in the light most favorable to the verdict, drawing all reasonable inferences in support of the verdict. Id. Critical to establishing either the possession or importation offense of which appellant was convicted, the Government must adduce sufficient evidence of his guilty knowledge,[1] which is the element that Martinez-Lugo challenges in this case. Direct evidence of such knowledge is rarely available.

When, as here, drugs are found in a "hidden compartment" of a vehicle, there "is at least a fair assumption that a third party might have concealed the controlled substances in the vehicle with the intent to use the unwitting defendant as the carrier in a smuggling enterprise." Cano-Guel, 167 F.3d at 904-05 (citation omitted). Thus, "additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge is required." United States v. Jones, 185 F.3d 459, 464 (5th Cir. 1999). Such

---

[1] "A conviction for the offense of possession of marijuana with intent to distribute requires proof that the defendant (1) knowingly (2) possessed marijuana (3) with intent to distribute it." United States v. Cano-Guel, 167 F.3d 900, 904 (5th Cir. 1999). Conviction of the offense of "[i]mportation of marijuana . . . requires proof that: (1) the defendant played a role in bringing a quantity of marijuana into the United States from a place outside the United States; (2) the defendant knew the substance was marijuana; and (3) the defendant knew the substance would enter the United States." Id.

2

evidence "may include nervousness, conflicting statements to law enforcement officials, and an implausible story." Id. Possession of large amounts of cash and the alteration of a vehicle also indicate knowledge of hidden contraband. Ortega Reyna, 148 F.3d at 544.

Martinez-Lugo gave two conflicting explanations for the circumstances surrounding his arrest. He initially told the inspections agent that he worked for Hector Gomez and that he was en route to a John Deere Dealership in Texas to pick up a tractor. However, the testimony of both Hector Gomez and the John Deere salesman revealed that Martinez-Lugo's story was a complete fabrication. Martinez-Lugo also gave the agent the conflicting and implausible story about being hired by an unidentified man in Reynosa who then drove him to the Progreso Port of Entry in order to drive a trailer across the border. In addition, Martinez-Lugo had a large amount of cash on his person. Further, the prosecution presented evidence establishing that Martinez-Lugo had attempted to alter the tractor-trailer so that it would resemble one belonging to a reputable transporter, and that he submitted false documentation to the insurance provider.

Martinez-Lugo argues that some of the evidence cuts at least equally against any consciousness of guilt: he did not attempt to flee from the Port of Entry; there was no evidence that he was nervous; and he sufficiently explained the $800 in cash on his person. He fails to note, however, that one of the agents

3

testified that he looked "scared" and "shocked," and the insurance agent testified that Martinez-Lugo looked nervous while in her office. And although the marijuana in the tires had deteriorated, suggesting that appellant did not put it there, this does not negate that he could have known of its presence. In short, because there was sufficient evidence from which the jury could have inferred guilty knowledge, it is not necessary that every reasonable hypothesis of innocence be excluded. See Ortega Reyna, 148 F.3d at 543. The evidence was sufficient to convict.

Martinez-Lugo's second contention is that his sentence should be vacated because it was imposed pursuant to a mandatory application of the sentencing Guidelines. Although he couches his argument in terms of a Sixth Amendment violation and "Booker" error, Martinez-Lugo's sentence was enhanced based only on the amount of marijuana found in the tires of the tractor-trailer, i.e., the amount with which he was charged and found guilty by the jury. Technically, this is a "Fanfan" error, not a Booker error. See United States v. Villegas, 404 F.3d 355, 364 (5th Cir. 2005) (discussing the distinction between the two types of error asserted by the respondents in Booker); see also United States v. Mares, 402 F.3d 511, 520, n.9 (5th Cir. 2005) (same). We review this contention, unpreserved in the district court, under a plain error

4

standard.[2]  See Mares, 402 F.3d at 520.  The error here satisfies the first two prongs of that standard by being both "plain" and "error."

The third prong of plain error analysis considers whether the error affected Martinez-Lugo's substantial rights.  Id.  In United States v. Olano, the Supreme Court held that the standard for determining whether an error affects a litigant's substantial rights requires a showing that the error "must have affected the outcome of the district court proceedings."  507 U.S. 725, 734, 113 S. Ct. 1770, 1778 (1993).

Martinez-Lugo argues that the district court's application of the Guidelines as mandatory, notwithstanding the absence of Booker error, is a "structural error" that is "insusceptible" to the above analysis.  This argument is inconsistent with this court's analysis in Mares and Villegas, wherein we reaffirmed the requirement that the error affect the particular defendant's substantial rights, drawing no distinction between a "Booker" error and a "Fanfan" error for the purposes of employing plain error

---

[2]    As stated in Mares:

An appellate court may not correct an error the defendant failed to raise in the district court unless there is "(1) error, (2)that is plain, and (3) that affects substantial rights.  If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Id. (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002)).

5

review.  See Mares, 402 F.3d at 520-21; Villegas, 404 F.3d at 364.
Other circuits have rejected similar "structural" error arguments.
See United States v. White, 405 F.3d 208, 224 (4th Cir. 2005)
(finding that "the error of sentencing [appellant] under a
mandatory guidelines regime does not warrant a presumption of
prejudice, nor is it structural"); United States v. Rodriquez, 406
F.3d 1261, 1264-75, *2-3 (11th Cir. 2005) (rejecting a similar
structural argument); United States v. Gonzales-Huerta, 403 F.3d
727, 734 (10th Cir. 2005) (holding that a "non-constitutional
Booker error does not constitute structural error").  We find that
there is no reason to distinguish these cases simply because they
dealt with "Booker" error, rather than "Fanfan" error.

Martinez-Lugo also contends that the record in his case
"shows at least a reasonable probability that, but for the error,
the outcome of the sentencing would have been different."  In
Mares, this court indicated that the defendant had to show more
than an equal probability of prejudice.  402 F.3d at 521.  This
court also indicated that if the effect of the error was
"uncertain," the defendant could not meet his burden.  Id.  We
disagree that this appellant has met his burden.

The court sua sponte reduced Martinez-Lugo's total
offense level for the estimated weight of the wrappings of the
drugs and also reduced his offense level for a minor role in the
offense, thereby reducing his guidelines sentence from a minimum of
97 months to a minimum of 63 months.  Further, the court imposed

6

the minimum sentence of the lowered guidelines range, 63 months. This sentence exceeded the statutory minimum by only three months. The court awarded Martinez-Lugo considerable leniency, but the record offers no basis for inferring that, had he used the guidelines as "advisory," the court would have reduced the sentence further within the narrow three-month range between the statutory minimum, 21 U.S.C. § 841(b)(1)(B), and appellant's actual sentence.

For the foregoing reasons, we conclude, first, that the evidence was sufficient to convict Martinez-Lugo, and second, that a district court's <u>Fanfan</u> error will be treated the same as <u>Booker</u> error in cases where the sentencing predated those decisions. Finally, appellant has not persuaded us that his substantial rights were affected by the court's imposition of his sentence here under the mistaken assumption that the Guidelines were mandatory.

The conviction and sentence are **AFFIRMED.**