**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 23, 2009

Charles R. Fulbruge III
Clerk

No. 06-20636

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

VICTOR JESUS RODRIGUEZ also known as Canana, and FREDY
GIOVANNI GARCIA-TOBAR, also known as Freddy Giovanni Garcia-Tobar,
Freddy Giovanni Garcia, also known as Jo Jo, also known as Joe, also known
as Alfredo Garcia,

Defendants - Appellants.

Appeal from the United States District Court
for the Southern District of Texas, Houston Division
USDC No. 4:03-CR-221-6

Before WIENER, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a much-publicized tragedy in which nineteen
Mexican immigrants died in a tractor-trailer while being smuggled into the
United States. In the trial in the district court, one of several arising from the
incident, a jury convicted appellants of conspiracy to harbor and transport aliens
for profit, resulting in death, and of various counts of harboring and transporting

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

individual aliens and aiding and abetting the same offenses, under various provisions of 8 U.S.C. § 1324. Appellant Victor Jesus Rodriguez challenges his conspiracy conviction and aspects of his sentence, based on the assertion that his connection with the fatal truck ride was tenuous. Appellant Fredy Giovanni Garcia-Tobar challenges his sentence and challenges his convictions based on the denial of his motion for continuance and on an evidentiary objection. Having considered the arguments on appeal, we AFFIRM the convictions and sentences of Rodriguez and Garcia-Tobar.

## I.  Facts and Proceedings

Evidence in the record, which we construe in the light most favorable to the verdicts,[1] supports the following summary of the facts.

Appellants participated in complicated, ongoing operations to smuggle undocumented immigrants across the border from Mexico and transport them to destinations within Texas. The process involved at least three different "cells" of smugglers that moved immigrants across the border and transported them to further points in the United States.

In May 2003, members of the cells brought together and packed more than seventy immigrants into the back of a truck trailer in Harlingen. En route to Houston, nineteen of them died as a result of heat and overcrowding before the driver abandoned the trailer in Victoria. The driver and other smugglers have been tried separately. *See, e.g., United States v. Williams*, 449 F.3d 635 (5th Cir. 2006) (allowing new trial, over double jeopardy objections, for the driver); *United States v. Rodriguez*, 553 F.3d 380 (5th Cir. 2008) (affirming convictions and sentences for several organizers including the parents of current Appellant Rodriguez).

---

[1] *United States v. Martinez-Lugo*, 411 F.3d 597, 599 (5th Cir.2005) (per curiam).

Rodriguez and Garcia-Tobar played roles in different stages of the Victoria tragedy. Rodriguez assisted his parents in smuggling immigrants from Mexico. Near the border, he received some of the immigrants who would end up in the truck, helped house them, and transported them to the site where they boarded the truck. Garcia-Tobar was involved in bringing immigrants from the border to locations further inside the United States. He helped recruit the driver of the truck in which the tragedy took place, provided the driver a hotel room the night before the trip, and served as a contact person for the driver during the operation, in addition to coordinating the operation with other organizers. He was paid approximately $5,000 for his involvement in transporting this group of aliens.

Appellants and twelve others were indicted in June, and a superseding indictment was issued in March of the following year. Count 1 of the superseding indictment charged all defendants with conspiracy to conceal, harbor, and transport thirty-eight undocumented aliens for commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A) and (B). Appellants and some of the other defendants were also charged with multiple counts of harboring aliens and transporting aliens for financial gain (one count each per particular alien), as well as aiding and abetting the transporting of aliens resulting in death, in violation of various provisions of § 1324.

Rodriguez was convicted of Count 1 (conspiracy), a total of twenty counts for harboring and transporting particular aliens, two additional counts for harboring two other aliens, and nineteen counts of aiding and abetting transportation of aliens resulting in death. He received a sentence of 247 months on various concurrent terms, plus five years of supervised release and $4200 in special costs.

3

Garcia-Tobar was convicted of Count 1 (conspiracy), twelve counts of transporting particular aliens, and nineteen counts of aiding and abetting transportation of aliens resulting in death. He received a sentence of 180 months on various concurrent terms plus five years of supervised release and $3900 in special costs.

## II.   Discussion: Rodriguez

### A.   Sufficiency

Rodriguez challenges the sufficiency of the evidence supporting the conspiracy conviction, arguing that he never had a meeting of the minds with the co-conspirators regarding the specific logistical details of transporting the aliens "outside of the immediate environs of their location after entry into the United States," including doing so by means of a non-refrigerated tractor-trailer. He alleges he was not a part of the conspiracy because the evidence only showed that he received aliens at the border and assisted with transporting and housing them near the border.

In considering whether there is sufficient evidence to support a verdict, this court asks only whether the jury's decision was rational, not whether it was correct. *United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005). The question is whether "any reasonable trier of fact" could have reached the jury's conclusion, beyond a reasonable doubt, on all elements of the crime. *United States v. Martinez-Lugo*, 411 F.3d 597, 599 (5th Cir. 2005) (per curiam). The court considers all evidence and all reasonable inferences therefrom in the light most favorable to the verdict. *Id.*

The elements of conspiracy are (1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the

objective. *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003).[2] "[E]ach element may be proven by circumstantial evidence," *United States v. Mulderig*, 120 F.3d 534, 547 (5th Cir. 1997), and proof of a tacit conspiratorial agreement is sufficient, *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir. 2005). Furthermore, it is not necessary to prove that a defendant knew exactly how others would carry out their parts of the scheme:

> Where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where the character of the property involved or nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred.

*United States v. Thomas*, 12 F.3d 1350, 1358 (5th Cir. 1994) (quoting *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982)); *see also Rodriguez*, 553 F.3d at 391 n.4 ("Conspiracy law contemplates the existence of subgroups."); *United States v. Morris*, 46 F.3d 410, 416 (5th Cir. 1995) (allowing inference of conspiracy where there are "several parts inherent in a larger common plan" and "the activities of one aspect of the scheme are necessary or advantageous to . . . the overall success of the venture.").

We conclude the evidence is sufficient to support Rodriguez's conspiracy conviction. There was evidence that Rodriguez played a substantial role in housing, feeding, collecting money from, and transporting various aliens, including delivering them to the area where they would board the ill-fated trailer. One alien testified that the smuggler who delivered her and other aliens

---

[2] Rodriguez bases his insufficiency argument on general conspiracy principles, and does not contend that the elements or rules for conspiracy under 18 U.S.C. § 1324(a)(1)(A)(v)(I) differ from those applicable under the general conspiracy statute at 18 U.S.C. § 371.

to the border told her Rodriguez would meet the aliens at a rendezvous point and take them to a safe house, which he did. He collected money from this group, and at one point took custody of a three-year old deemed too young to travel with the others, but whom he and his parents planned to transport separately. The evidence would allow a reasonable jury to conclude that (1) there was an agreement to harbor these aliens and transport them past the checkpoints toward Houston and points beyond for financial gain, (2) Rodriguez knew about the object of the plan, including the fact that the aliens were to be transported away from the border, and (3) various members of the scheme, including Rodriguez himself, undertook overt acts to harbor and transport the aliens.

## B.   Sentence

At both Rodriguez's and Garcia-Tobar's sentencings, the district court departed upwardly in part to reflect the total number of deaths involved in the incident. Rodriguez's Guidelines calculation, not disputed on appeal, called for 140 to 175 months, but he received 247 months. Rodriguez challenges his sentence, arguing it is unreasonable to hold him accountable for all of the deaths because he was not directly involved in smuggling all of the aliens, as evidenced by his acquittals on the harboring and transporting count with respect to some of the aliens. Further, he notes that on the conspiracy count, the jury checked "No" under "We, the jury, further unanimously find beyond a reasonable doubt that the conduct of all co-conspirators in furtherance of the conspiracy was reasonably foreseeable to this Defendant."

The Supreme Court has mandated a two-step process for review of sentences imposed pursuant to the Sentencing Guidelines. The reviewing court must first determine whether the district court was procedurally correct in calculating the base sentence and then determine whether the sentence actually imposed was reasonable. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 594, 596–97 (2007). The court reviews *de novo* the interpretation and application of

6

the Sentencing Guidelines, but reviews findings of fact in the course of sentencing for clear error. *United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006). The Supreme Court has equated the reasonableness requirement with abuse of discretion review. *See Gall*, 128 S.Ct. at 594. There is no presumption of unreasonableness for sentences outside the Guideline range; instead, the sentencing court must provide "sufficient justifications." *Id.*

The United States Sentencing Guidelines ("U.S.S.G.") authorize departures when circumstances are present to a degree not adequately taken into consideration by the Guidelines. U.S.S.G. § 5K2.0(a)(3). U.S.S.G. § 5K2.1 provides that "[i]f death resulted, the court may increase the sentence above the authorized Guideline range" and states that "whether multiple deaths resulted" is an "appropriate factor[ ]."

There is no reversible error in Rodriguez's sentence. He was convicted of participating in the conspiracy that led to nineteen deaths. He took no care to ensure the ongoing safety of the people he helped harbor and transport, and the presence of each person that he delivered to be picked up by the trailer contributed to the overcrowding that led to the deaths. *See United States v. De Jesus-Ojeda*, 515 F.3d 434, 443 (5th Cir. 2008) (finding deaths from dehydration in Texas bush reasonably foreseeable even though defendant did not know precisely how the smuggling, transporting, and harboring would occur). As discussed above, culpability for conspiracy does not depend on knowing or pre-approving all actions of one's co-conspirators in furtherance of the agreed-upon object. Here, the tragedy resulted from the conspiracy, and the district court followed a justification for upward departure that is expressly articulated in the Guidelines. This was not an abuse of discretion.

### III. Discussion: Garcia-Tobar

#### A. Sentencing

Garcia-Tobar also challenges his sentence. His Guideline range was 108 to 135 months, but the court departed upward, imposing a sentence of 180 months, based largely on the number of deaths caused by the conspiracy. He argues his upward departure was inappropriate because he demonstrated a diminished mental capacity, which the court failed to take into consideration. He argues that the court thereby "lump[ed] him in with everyone else" and failed to give him the requisite individualized assessment, citing *United States v. Armstrong*, 550 F.3d 382, 406 (5th Cir. 2008).

Garcia-Tobar is incorrect in his assertion that the district court failed to consider his mental acuity in sentencing. The district court in fact imposed the upward departure for individualized reasons. In a lengthy discussion of the individualized factors informing Garcia-Tobar's sentence, the district court indicated that it had considered Garcia-Tobar's "intellectual functioning and mental capacity in making the assessment that an upward departure is warranted and justified by this defendant's involvement and conduct." It further indicated that it had considered Garcia-Tobar's culpability relative to other members of the conspiracy who also received upward departures. As in *Armstrong*, "a review of the sentencing hearing transcript clearly shows that the district court . . . gave an individualized assessment, and adequately explained the chosen sentence, including an explanation for imposing an upward departure from the Guidelines range." 550 F.3d at 406. Garcia-Tobar's claim of a lack of individualized sentencing accordingly fails.

#### B. Motion for continuance

Garcia-Tobar also argues the district court improperly denied his "pro se motion" for continuance made at the outset of trial.

Garcia-Tobar was represented for more than six months prior to trial by attorneys Nemecio Lopez and Alberto Garcia. Lopez had to withdraw shortly before trial because of a conflict, and former United States Attorney Mervyn Mosbacker joined ten days before trial to replace him. Mosbacker told the court at that time that he would be ready for trial.

As the trial began, however, Garcia-Tobar asked to personally address the court to ask for a continuance.[3] In a somewhat confusing explanation of his motion for continuance, he claimed that his lawyers had not communicated well with him and that he did not understand the nature of the proceedings despite having reviewed the indictment with a psychiatrist. The district court appeared to view the colloquy as rehashing issues previously addressed when the court rejected Garcia-Tobar's assertion of incompetency, after a psychiatric evaluation had indicated he was feigning incompetency. Garcia-Tobar's lawyers stated they were ready for trial, and the motion for continuance was denied.

"Trial judges have broad discretion in deciding requests for continuances, and we review only for an abuse of that discretion resulting in serious prejudice." *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007) (citation omitted). Here, Garcia-Tobar's lawyers represented they were prepared for trial, the defendant's objections arguably amounted to an attempt to re-urge incompetency (an issue already decided and not appealed), and there is no allegation of prejudice in the form of an explanation of what might have happened differently had there been a continuance. We find no reversible error in the district court's denial of the continuance.

## C. Rule 404(b) argument

Finally, Garcia-Tobar argues that the district court erred when it allowed evidence, over Garcia-Tobar's objection, of how he became involved with the

---

[3] Garcia-Tobar had given Mosbacker a letter expressing concern that Mosbacker did not have enough time to prepare for trial.

smuggling cell and of his participation in specific prior operations to transport other groups of immigrants. He argues that this conduct took place before the time period specified for the conspiracy in the indictment and that admitting evidence of this conduct violated Federal Rule of Evidence 404(b). The district court's decisions on the admissibility of evidence are reviewed for abuse of discretion. *See, e.g., United States v. Akpan*, 407 F.3d 360, 373 (5th Cir. 2005).

Rule 404(b) prohibits admission of evidence concerning "other crimes, wrongs, or acts" for the purpose of "prov[ing] the character of a person in order to show action in conformity therewith." In applying the rule to "continuing scheme[s]," however, we have determined that "[e]vidence of an uncharged offense arising out of the same transaction or series of transactions as the charged offense is not an 'extrinsic' offense within the meaning of Rule 404(b), and is therefore not barred by the rule." *United States v. Dula*, 989 F.2d 772, 777 (5th Cir. 1993).

The indicted conspiracy in this case was an instance of smuggling arising in the context of regular, ongoing operations. One could plausibly describe it as part of the same "series of transactions" as recent smuggling operations accomplished by the same actors with the same modes of operation. *See Dula*, 989 F.2d at 777.

Furthermore, even assuming arguendo that the evidence was extrinsic and was impermissibly admitted, there would be no reversible error because the error would be harmless. In a harmless error examination,

> we view the error in relation to the entire proceeding, not merely in isolation. Reversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction. When the other evidence of guilt is overwhelming, and the error would not have substantially influenced the jury's verdict, the error is harmless.

10

*United States v. Hawley*, 516 F.3d 264, 268 (5th Cir. 2008) (footnotes omitted). Here, telephone records thoroughly connect Garcia-Tobar with the conspiracy, and some co-conspirators testified extensively as to Garcia-Tobar's role. There is ample evidence, apart from the history of his involvement in transporting other groups of immigrants, to convict him of the crimes at issue.

## IV. CONCLUSION

For the reasons given above, the convictions and sentences of Rodriguez and Garcia-Tobar are AFFIRMED.