**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Refugio LOPEZ, also known as**
**Cuco, Defendant–Appellant.**

No. 09–50500.

United States Court of Appeals,
Fifth Circuit.

Aug. 3, 2010.

Joseph H. Gay, Jr., Assistant U.S. Attorney, U.S. Attorney's Office, San Antonio, TX, for Plaintiff–Appellee.

Blas H. Delgado, Law Offices of Blas H. Delgado, Jr., Helotes, TX, for Defendant–Appellant.

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM: *

Defendant–Appellant Refugio Lopez was tried and convicted in federal court of conspiring to transport aliens under 8 U.S.C. § 1324(a)(1)(A)(ii). He was sentenced to 70 months' imprisonment and three years' supervised release. He raises several challenges to his conviction and sentence. We AFFIRM.

## I. Factual and Procedural Background

Refugio Lopez, also known as "Cuco," was indicted on charges of conspiring to transport or attempt to transport illegal aliens within the United States, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and (B)(i). He was convicted by a jury in federal court and sentenced by the district court to 70 months' imprisonment, at the low end of the United States Sentencing Guidelines range of 70 to 87 months. Lopez brought this timely appeal.

At trial, the following evidence was offered. Guadalupe Montes owned a house in Big Wells, Texas, close to the U.S.–Mexico border, and illegal aliens would frequently come to her house and ask her for food and water and to use her telephone. In 2005, an alien using her phone handed it to her and Lopez was on the line; Lopez asked Montes if he could bring trucks to her house to pick up the aliens and he offered her money. Montes began

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

helping Lopez transport the aliens on a regular basis.

Anthony Nunez, a mechanic, met Lopez in 2005 when Lopez asked him to repair a vehicle. After having Nunez repair a number of vehicles, Lopez eventually began to trust Nunez and asked him if he would help transport illegal aliens. Lopez offered Nunez $100 for each alien he transported. Nunez agreed at some point in 2006, and he began helping Lopez transport the aliens on a regular basis. Lisa Carter, Nunez's common law wife, also began working for Lopez in 2007, after she was released from prison (on an unrelated charge). While she was in prison, Nunez had informed her that he was working for Lopez.

The conspiracy generally operated as follows. Lopez would arrange for illegal aliens to cross the border to Montes's house. The aliens would be transported (sometimes by themselves, sometimes with the help of guides) to Lopez's house in San Antonio, where they would eat and bathe. If the aliens had not paid Lopez before crossing the border, they would arrange for friends or family members to wire money through Western Union; Lopez paid Montes, Nunez, and Carter to pick up the wire transfers for him under their names at the rate of $50 per transfer. The payments ranged from approximately $1,500 to $2,700 per person. Carter and Nunez both testified that they did not know the persons who wired the money and that the transfers were payments for alien smuggling. Once payment was finalized, Nunez (and sometimes Carter) would drive the aliens to their final destinations (usually in the area of Austin, Houston, or Dallas).

On March 11, 2007, Carter was arrested outside Big Wells. At the time of her arrest, Carter was driving one of Lopez's pickup trucks, which held nine illegal aliens. Both Carter and Nunez cooperated with an investigation, and Nunez gave permission to federal officers to tape record phone conversations between himself and Lopez, during which Lopez made incriminating statements about the conspiracy to transport aliens. A search of Lopez's house in San Antonio by ICE officials discovered piles of dirty clothing in all sizes, for both men and women, including little girls' shoes.

Both Carter and Montes pled guilty to charges arising from the conspiracy. Carter, Montes and Nunez testified against Lopez at his trial, and all three identified Lopez as having the nickname "Cuco." Carter testified that over the course of three months, she personally was involved in transporting about 75 aliens. Nunez testified that he delivered groups of aliens (between 18 and 21 aliens) about once a month between 2006 and 2007. As mentioned above, Lopez was convicted and sentenced to 70 months' imprisonment, and he brought this timely appeal.

## II. Constructive Amendment

Lopez argues that the trial court improperly constructively amended the indictment by instructing the jury on aiding and abetting. Lopez was indicted solely on principal liability under 8 U.S.C. § 1324; by instructing the jury on aiding and abetting liability, he contends that the aiding and abetting instruction allowed the jury to convict him on a materially different theory or set of facts than those originally charged.

Lopez concedes that, as he failed to object to the jury instruction at trial, plain error review applies. *See United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "To establish plain error, an appellant must show a forfeited error that is clear or obvious and that affected his substantial rights." *Unit-*

ed States v. Davis, 602 F.3d 643, 647 (5th Cir.2010). "Ordinarily, an error affects substantial rights only if it 'affected the outcome of the district court proceedings.'" *Id.* (quoting *Puckett v. United States,* —— U.S. ——, 129 S.Ct. 1423, 1429, 173 L.Ed.2d 266 (2009)). If this showing is made, "the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Puckett,* 129 S.Ct. at 1429 (quoting *Olano,* 507 U.S. at 736, 113 S.Ct. 1770).

Lopez was indicted under 8 U.S.C. § 1324(a)(1)(A)(v)(I), the conspiracy subsection of the alien smuggling statute, which "distinguishes for purposes of punishment between a principal and an aider and abettor." *United States v. Williams* (*Williams I*), 449 F.3d 635, 647 (5th Cir. 2006); 8 U.S.C. § 1324(a)(1)(B)(i), (ii) (describing statutory maximum sentences for principal liability—not more than ten years—and for aider and abettor liability—not more than five years). Section 1324 is unique in this regard; under the general aiding and abetting code section, 18 U.S.C. § 2, a person who aids or abets is treated in the same manner as the principal for sentencing purposes. The verdict form submitted to the jury was general and did not allow the jury to indicate whether it convicted Lopez as a principal or as an aider and abettor.

The addition of the aiding and abetting instruction has implications under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), as the statutory maximum sentence increases from five years (for aiding and abetting under 8 U.S.C. § 1324(a)(1)(B)(ii)) to ten years (for being a principal under 8 U.S.C.

§ 1324(a)(1)(B)(i)) without requiring a jury determination of the facts required to increase the statutory maximum. *See United States v. Hilario–Hilario,* 529 F.3d 65, 75–77 (1st Cir.2008) (discussing a similar claim).

"The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment." *United States v. Threadgill,* 172 F.3d 357, 370 (5th Cir.1999) (internal quotation marks omitted); *see also Stirone v. United States,* 361 U.S. 212, 215–16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) ("[A]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself."). "A jury charge constructively amends an indictment, in violation of the Fifth Amendment, if it permits the jury to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged." *United States v. Daniels,* 252 F.3d 411, 413–14 (5th Cir. 2001) (internal quotation marks omitted). "That is, constructive amendment occurs if the jury is permitted to convict on an alternative basis permitted by the statute but not charged in the indictment." *Id.* at 414 (internal quotation marks omitted). Ordinarily, a constructive amendment constitutes reversible error. *United States v. Reasor,* 418 F.3d 466, 475 (5th Cir.2005).

Assuming without deciding that the first three requirements for plain error review are met, we decline to exercise our discretion to correct any error in this case. *Cf. Hilario–Hilario,* 529 F.3d at 76 (stating, on plain error review of a constructive amendment claim dealing with § 1324's aiding and abetting provision, that "[i]t might be enough to negate [any] miscarriage [of justice] if the evidence were compelling and the jury likely ... found [the defendant] guilty as a principal," but deciding to exercise discretion in defendant's

favor because the court had "no reason to think [the jury] convicted [the defendant] of the substantive offense of smuggling"). Unlike *Hilario–Hilario*, the record is clear that the jury convicted Lopez as a principal, as the evidence against him was overwhelming. The government consistently presented the theory that Lopez was the leader of the conspiracy and asked the jury during closing arguments to return a guilty verdict on the charge of conspiring to transport aliens. Montes, Carter, and Nunez all consistently testified that Lopez recruited them into the conspiracy and that Lopez was the one who paid them for participating. There was no evidence to support a conclusion that the jury found that Lopez was liable as an aider and abettor but not as a principal. In fact, the only time the term "aiding and abetting" was used before the jury during the entire trial was when the district court gave the disputed jury instruction. *See United States v. Partida*, 385 F.3d 546, 559 (5th Cir.2004) (finding no plain error on review of claim that jury instruction allowed jury to convict on un-indicted charge of attempted conspiracy, after considering that "neither the prosecution nor the defense argued for a finding of attempted conspiracy, nor was evidence of a mere attempt placed before the jury" and noting the "overwhelming evidence of a fully formed conspiracy"). Allowing Lopez's conviction to stand does not "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings," *Puckett*, 129 S.Ct. at 1429, and therefore we decline to exercise our discretion to correct any error on this point.

■ Lopez also complains of the general verdict form submitted to the jury. He contends that the general verdict form, in combination with the aiding and abetting instruction, allowed the jury to convict him of either conspiracy to transport aliens or aiding and abetting a conspiracy to transport aliens. Lopez argues that had the verdict form allowed the jury to indicate which theory they convicted Lopez under, the *Apprendi* problem would be alleviated. Assuming without deciding that an amended verdict form would have cured any *Apprendi* error, Lopez has waived this error. After reading the jury instruction, the district court realized that there was a potential problem with submitting the case to the jury with the general verdict form. The district court stated:

> [I]t hit me as I was reading the instructions the government asked for an aiding and abetting charge. Do you want me to prepare a new verdict form that allows the jury to tell us on what theory they are relying for conviction, be it conspiracy or aiding and abetting? And the only reason I'm saying that is conspiracy is zero to 10 under the statute. When you combine the two theories I'm not so sure whether it's zero to 10 or zero to five, because aiding and abetting is zero to five regardless of [a finding of] for [financial] gain. And it didn't hit me until I was reading the instruction.
>
> To find him guilty of aiding and abetting the conspiracy, wouldn't that potentially be zero to five? ... If you—all want to leave it generally as it is.

Defense counsel responded: "We're fine the way it is, Your Honor."

"Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *Olano*, 507 U.S. at 733, 113 S.Ct. 1770 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). "Waiver is an 'affirmative choice by the defendant to forego [sic] any remedy available to him.'" *United States v. Phillips*, 477 F.3d 215, 223 (5th Cir.2007) (quoting *United States v. Dodson*, 288 F.3d 153, 160

(5th Cir.2002)). The district court specifically brought the *Apprendi* problem to defense counsel's attention by warning of the discrepancies between the statutory maximum sentences for the two crimes. Defense counsel specifically declined the opportunity to submit a jury form that would have allowed the jury to distinguish between principal liability and aider and abettor liability. By making the affirmative choice to decline the district court's express offer to amend the verdict form, Lopez intentionally relinquished a known right and, correspondingly, waived any error as to the jury verdict form. We also note that, had the error not been waived, it likely would have been harmless error, as it is clear that Lopez was tried exclusively as a principal.

### III. Sufficiency of the Evidence

■ Lopez argues that the evidence was insufficient to support a conviction. Specifically, he contends that there was no credible evidence of an overt act committed in order to further the conspiracy, and that the government failed to prove the "element" of alienage.

On a challenge to the sufficiency of the evidence, "[w]e will affirm the district court 'if a reasonable trier of fact could conclude that the elements of the offense were established beyond a reasonable doubt.'" *United States v. Percel,* 553 F.3d 903, 910 (5th Cir.2008) (quoting *United States v. McDowell,* 498 F.3d 308, 312 (5th Cir.2007)) (alteration omitted). In under-taking this review, we must view the evidence in the light most favorable to the verdict and draw all reasonable inferences from the evidence to support the verdict. *Id.* "[W]e apply a rule of reason, knowing that the jury may properly rely on their common sense and evaluate the facts in light of their knowledge and the natural tendencies and inclinations of human beings." *United States v. Holmes,* 406 F.3d 337, 351 (5th Cir.2005) (internal quotation marks omitted).

Lopez argues that the government was required to prove an overt act taken in furtherance of the conspiracy, but that the government failed to do so. The government responds that conspiracy under 8 U.S.C. § 1324(a)(1)(A)(v)(I) does not require proof of an overt act, as the code section is silent as to the requirement of any overt act.[1] In support of this proposition, the government cites three Supreme Court cases where other similarly silent criminal code sections were held not to require proof of an overt act. *See Whitfield v. United States,* 543 U.S. 209, 214, 125 S.Ct. 687, 160 L.Ed.2d 611 (2005) (proof of overt act not required under 18 U.S.C. § 1956(h) because "the text ... does not expressly make the commission of an overt act an element of the conspiracy offense"); *Salinas v. United States,* 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (same as to 18 U.S.C. § 1962(d), RICO statute); *United States v. Shabani,* 513 U.S. 10, 11, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (same as to 21 U.S.C. § 846,

---

1. The relevant statutory text reads:
    Any person who—
    (i) knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien; [or]
    ....
    (v)(I) engages in any conspiracy to commit any of the preceding acts ...
    ....
    shall be punished as provided in subparagraph (B).
    8 U.S.C. § 1324(a)(1)(A)

drug conspiracy statute). The government's contention is perhaps correct in light of this Supreme Court precedent;[2] however, we do not need to determine whether an overt act is required, because the government did clearly establish that an overt act had been taken in furtherance of the agreement.

■ All three co-conspirators testified to overt acts committed in furtherance of the agreement, including that: aliens were guided to Montes's house in Big Wells; aliens would be transported from Big Wells to Lopez's house in San Antonio in tarp-covered trucks owned by Lopez; once at Lopez's house, the aliens would shower, eat, and make payment arrangements; the aliens' family members would wire payments through Western Union (registered under Carter's, Nunez's, and Montes's names); Carter and Nunez were paid $50 per wire transfer by Lopez; Carter testified she was involved in transporting around 75 aliens over the course of three months; and Carter was arrested while driving a truckload of aliens from Montes's house to Lopez's house. Lopez challenges his co-conspirators' testimony on credibili-

ty grounds; however, all credibility determinations must be resolved in favor of the verdict. *United States v. Majors,* 328 F.3d 791, 796 (5th Cir.2003) (per curiam). We may not entertain Lopez's credibility-based challenges to the sufficiency of the evidence. A rational jury could have found beyond a reasonable doubt that Lopez conspired to transport illegal aliens.

■ Lopez also contends that the government failed to prove that the offense involved illegal aliens. However, Lopez was charged with conspiracy to transport aliens, not with the completed offense of alien smuggling. The government did not need to prove that an alien actually "entered or remained in the United States in violation of the law." *United States v. Nolasco–Rosas,* 286 F.3d 762, 765 (5th Cir. 2002) (per curiam) (discussing elements of completed offense of alien smuggling).

## IV. Rule 403 Challenge

■ Lopez challenges the admission of a spreadsheet from Western Union showing two wire transfers.[3] As an evi-

---

**2.** *United States v. Avila–Dominguez,* 610 F.2d 1266, 1271 (5th Cir.1980), held that an overt act was required, and that case was followed in *United States v. Valles–Zamora,* 252 Fed. Appx. 701, 704 (5th Cir.2007) (per curiam). However, *Avila–Dominguez* was decided before the conspiracy provision was added to § 1324 in 1996; at the time of decision, offenses of conspiracy to violate § 1324 were charged under 18 U.S.C. § 371, the general conspiracy statute. Several other unpublished Fifth Circuit cases have required an overt act. *See United States v. Aguirre,* 354 Fed.Appx. 916, 918 (5th Cir.2009) (per curiam); *United States v. Rodriguez,* 353 Fed. Appx. 890, 893 (5th Cir.2009) (per curiam); *United States v. Valerio–Santibanez,* 81 Fed. Appx. 836, 838 (5th Cir.2003) (per curiam); *United States v. Castro–Hernandez,* 205 F.3d 1337, 1999 WL 1338382, at *3 (5th Cir.1999) (per curiam) (unpublished table opinion). We have never directly addressed the impact of the 1996 amendment or of the subsequent

Supreme Court decisions discussed above. However, we do not need to resolve this question today, as the record clearly shows that the government offered proof of more than one overt act taken by Lopez and his co-conspirators in furtherance of the agreement to transport aliens.

**3.** Lopez also argues that the district court erred in admitting a transcript of a recorded telephone call between "Cuco" and Nunez. The recording was entirely in Spanish; the transcript translates the recording into English. When indicating the speakers, the transcript substitutes "Lopez" (the defendant's last name) for "Cuco" (his nickname). Lopez contends that this substitution prevents the transcription for being an accurate, word-for-word translation of the recording. The district court admitted the transcript over Lopez's objection as an aid to the jury, not as substantive evidence, and gave a limiting in-

dentiary ruling, this is subject to review under the highly deferential abuse of discretion standard. *United States v. Rice,* 607 F.3d 133, 138 (5th Cir.2010). The spreadsheet shows fourteen wire transfers. Twelve of the transfers were sent to Antonio Nunez, and two were sent to Lisa Carter. The amounts of the transfers on the spreadsheet varied from $164.99 to $2,120, but most were around $1,500. Lopez raised an objection to the spreadsheet at trial under Federal Rule of Evidence 403. After conducting a Rule 403 balancing test on the record, the district court overruled the objection, concluding:

> the probative value outweighs the prejudicial effect. In this particular case [the Western Union evidence] shows a relationship between the defendant and the co-[conspirators] that is something more than just an acquaintanceship. It shows an agency of sorts which is the heart of the conspiracy, that they acted in conjunction with each other for the movement of the aliens.
>
> Granted there is not a specific element of "for financial gain" under conspiracy. [This evidence] however though can still be used as evidence to show that there was an agency relationship there.

Lopez argues on appeal that this ruling was an abuse of discretion.[4]

The spreadsheet was admitted during direct examination of Carter. Carter testified that she picked up the two wire transfers—one for $1,900 from Enrique Blanco Rodriguez and one for $1,500 from Estefano Alfaro. Carter testified that she did not know the people sending the transfers; that she picked up the transfers in her own name; that she received $50 for each transfer picked up in her name; and that the transfers were intended as prepayment to Lopez for delivering the aliens to their destination. Montes and Nunez also testified that Lopez paid them to pick up wire transfers in their names. As the district court noted, the evidence was relevant to show the relationship between the defendant and his co-conspirators and to show the existence of an agreement between the co-conspirators. Lopez fails to show undue prejudice stemming from this evidence, and the district court did not abuse its discretion in allowing evidence of the Western Union transfers.

## V. Challenges to the Sentence

Lopez challenges his sentence on two grounds: first, he contends that the district court improperly calculated his base offense level by relying on two improper factual findings; and second, he argues that his sentence was unreasonable given

struction to this effect. However, Lopez has inadequately briefed this issue. He offers only one citation to case law dealing with translations. That single case, *Valladares v. United States,* 871 F.2d 1564 (11th Cir.1989), involved a translator appointed to aid a non-English-speaking defendant to understand his trial proceedings. Lopez does not cite any case law dealing with the admissibility of tapes or transcripts. As a result, he has waived this argument. *See United States v. Stalnaker,* 571 F.3d 428, 439–40 (5th Cir. 2009) (holding that defendant's failure to provide citations to relevant case law constituted waiver for failure to adequately brief).

4. Lopez also attempts to argue that the district court constructively amended the indictment by allowing evidence of the wire transfers, because the indictment did not allege that he joined the conspiracy for purposes of financial gain. However, Lopez, who is represented by appointed counsel, fails to adequately brief this point. He states the legal standard but offers no further arguments or explanation. Therefore, this argument is waived. *See United States v. Reagan,* 596 F.3d 251, 254–55 (5th Cir.2010).

the disparity between his sentence (70 months) and his co-conspirators' sentences (24 months and 27 months).

### 1. Factual Findings

We review the district court's application of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") de novo and its factual findings for clear error. *United States v. Williams* (*Williams IV*), 610 F.3d 271, 291–92 (5th Cir.2010). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir.2005) (internal quotation marks omitted). "A sentencing court's factual findings must be supported by a preponderance of the evidence." *United States v. Chavez*, 119 F.3d 342, 349 (5th Cir.1997) (per curiam).

In determining Lopez's base offense level, the district court found that (1) the conspiracy involved the transportation of 100 or more illegal aliens under U.S.S.G. § 2L1.1(b)(2)(C) and (2) Lopez was "an organizer or leader of a criminal activity that involved five or more participants" under U.S.S.G. § 3B1.1(a). Lopez objected to both factual findings at the sentencing hearing, and the district court overruled his objections. Accordingly, the district court assigned a nine-level enhancement under § 2L1.1(b)(2)(C) and a four-level enhancement under § 3B1.1(a), ultimately calculating a Guidelines range of 70 to 87 months. The district court sentenced Lopez to 70 months' imprisonment.

▪ As to the finding that the conspiracy involved more than 100 aliens, Lopez argues that the district court improperly relied on the Presentence Investigation Report (PSR), as the PSR allegedly conflicted with testimony given at trial about the number of aliens involved in the conspiracy. Specifically, he argues that Montes's trial testimony conflicted with her statement to the probation officer, and that Carter testified only to being involved personally in the transportation of 75 aliens.

Section 2L1.1(b)(2) applies " '[i]f the offense involved the smuggling, transporting, or harboring of six or more unlawful aliens,' " *Williams IV*, 610 F.3d at 292 (quoting U.S.S.G. § 2L1.1(b)(2)(C)) and it "provides for different level increases depending on the number of unlawful aliens smuggled, transported, or harbored." *Id.* "[A] six-level enhancement applies if the number is 25 to 99, and a nine-level enhancement applies if the number is 100 or more." *Id.* (internal citations omitted). The district court did not clearly err in applying the nine-level enhancement. While it is true that Carter testified that she only saw around 75 people who had been smuggled in, Carter specified this was only during a three-month period. Carter did not work for Lopez for as long as Montes and Nunez did. Montes testified that groups of fifteen to twenty aliens would come to her house about once a month during the time she worked for Lopez (from 2005 to 2008). There was some uncertainty about exactly how many aliens Montes helped Lopez transport, as Montes independently helped transport aliens prior to her interactions with Lopez. Nunez testified that he transported aliens on 12 or 13 occasions before Carter started working for Lopez, with approximately 18 to 21 people on each load. In addition, Nunez testified that he transported an additional three loads of aliens after Carter

began working. The testimony of both Montes and Nunez supports the district court's finding that more than 100 aliens were transported.[5] Given the time period that Carter was involved in the conspiracy, her testimony that 75 aliens were transported does not make the district court's finding clearly erroneous. The nine-level enhancement under § 2L1.1(b)(2) was not improper.

■ As to the finding that Lopez played a leadership role in the conspiracy, Lopez argues that there is no support for the district court's finding that the conspiracy involved five participants.[6] He concedes that there were four participants in the conspiracy—himself, Carter, Nunez, and Montes—but argues that no one else was involved. Under § 3B1.1(a), a four-level enhancement is appropriate "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." The comments to the Guidelines define a "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." U.S.S.G. § 3B1.1 cmt. n. 1. The sentencing court may count the defendant as one participant. *United States v. Barbontin*, 907 F.2d 1494, 1498 (5th Cir. 1990).

At trial, Carter testified that on the day she was arrested, she was working with Nunez, Montes, Sandra Campos (Lopez's girlfriend), Rosalinda Quintero (also referred to in the record as Rosalina Garza–Quintero and as Rosalinda Garza), and two of Montes's nephews. Nunez testified that Lopez's brother helped deliver aliens to their destinations on at least one occasion. Nunez also testified that Sandra Campos was involved in one specific trip with him and that he split his payment for that trip with her. In addition to this information detailed at trial, the PSR added that Lopez's brother, Armando, had transported four aliens to Lopez's house.[7] Given this evidence, adduced both at trial and in the PSR, the trial court was not clearly erroneous in concluding that five or more individuals were involved in the conspiracy to transport aliens. The four-level enhancement under § 3B1.1(a) was not improper.

### 2. Reasonableness of Sentence

■ We consider the substantive reasonableness of a Guidelines sentence under an abuse of discretion standard. *United States v. Rodriguez*, 523 F.3d 519, 525 (5th Cir.2008). A Guidelines sentence is entitled to a presumption of reasonableness. *Id.* Lopez complains that the district court did not consider the sentencing factors listed in 18 U.S.C. § 3553(a)—specifically, that Lopez's 70–month sentence was an "unwarranted . . . disparit[y]" under

---

5. The district court did not rely on the PSR's finding that 459 aliens were transported, but rather calculated independently that more than 100 aliens were transported.

6. Lopez does not contest the finding that he did, in fact, play a leadership role in the conspiracy.

7. The PSR is "considered reliable and may be considered as evidence by the trial judge when making sentencing determinations."

*United States v. Vital*, 68 F.3d 114, 120 (5th Cir.1995) (citing *United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir.1992)). "Furthermore, if no relevant affidavits or other evidence is submitted to rebut the information contained in the PSR, the court is free to adopt its findings without further inquiry or explanation." *Id.; accord United States v. Cabrera*, 288 F.3d 163, 173–74 (5th Cir.2002) (per curiam).

§ 3553(a)(6) from Montes's and Carter's sentences (27 and 24 months, respectively).

It is true that if a similarly situated defendant receives a lesser sentence, a defendant may be able to establish substantive unreasonableness based on an unwarranted disparity in sentences. *See United States v. Armstrong,* 550 F.3d 382, 406 (5th Cir.2008). Here, as the district court noted in response to Lopez's objection at sentencing, Lopez was not similarly situated with Montes and Carter for several reasons. Lopez insisted on taking the case to a jury trial, while Montes and Carter pled guilty and testified for the government, thereby receiving downward departures for acceptance of responsibility and substantial assistance to authorities. *See United States v. Duncan,* 919 F.2d 981, 992 (5th Cir.1990) ("Defendants who enter into plea bargains agree to cooperate with the government in exchange for a known result that they consider favorable. They are in an entirely different position from those who submit their cases to a jury and take their chances on the jury's decisions."). As discussed above, Lopez received 13 total levels in enhancement for his role as leader or organizer and for having transported over 100 aliens—enhancements that Montes and Carter did not receive. Lopez argues that because he did not have a criminal history, while both Carter and Montes did, his sentence should have been closer to theirs. However, the district court was entirely within its discretion in determining that Lopez was not similarly situated with Montes and Carter. *See United States v. Candia,* 454 F.3d 468, 473 (5th Cir.2006) (according "great deference" to within-Guidelines sentence). Therefore, the disparity between sentences was not unwarranted, the district court did not abuse its discretion, and Lopez's sentence is not substantively unreasonable.

## VI. Conclusion

For the reasons discussed above, we AFFIRM Lopez's conviction and sentence.

AFFIRMED.